Amanda **BAKER**, Appellant,

v.

Theresa **KAMMERER**, Appellee.

No. 2004–SC–000085–DG.

Supreme Court of Kentucky.

March 23, 2006.

Charles T. Lester, Jr., Ft. Thomas, Counsel for Appellant.

Timothy Brien Schenkel, Kelly A. Armstrong, Freund, Freeze & Arnold, Covington, KY, John J. Garvey, III, Cincinnati, OH, Counsel for Appellee.

Opinion of the Court by Justice ROACH.

## I. INTRODUCTION

This is an appeal of a jury verdict in a personal injury action that was brought by Appellant, Amanda Baker, against Appellee, Theresa Kammerer. At trial, Baker

was not permitted to cross-examine Hope Frost, an investigator employed by Kammerer's insurance carrier, about possible bias stemming from her employment. The Court of Appeals affirmed the trial court. Because we hold that the trial court abused its discretion in limiting the cross-examination of Frost, we hereby reverse.

## II. BACKGROUND

This case involves a personal injury claim arising from an accident in which Baker, who was crossing the street on foot, was struck by an automobile driven by Kammerer. Baker sought various damages, including medical expenses of over $5,000.00. At trial, the parties contested the circumstances of the accident, particularly whether Baker was inside the designated crosswalk when she was hit and whether the traffic signal favored Kammerer.

Prior to opening statements, Kammerer's counsel indicated to the trial court that he had received supplemental discovery information shortly before trial suggesting that Baker intended to call two eyewitnesses, Aleisha Sams and Leah Edmonds, to testify on her behalf. He stated, "One of those witnesses spoke to Hope Frost, who's in the courtroom right now, and gave a statement. If she testifies inconsistently with that statement, I might call Hope Frost." As noted above, Frost was an investigator employed by Kammerer's insurance provider. Baker's attorney asserted that if Frost testified he was "going to have to identify who Hope [Frost] is—she's the insurance adjuster." While counsel continued to discuss the point, the judge noted, "My suggestion is, you don't have to identify [Frost], she's just a person the witness spoke to."

Later in the trial, after both Sams and Edmonds had testified on behalf of Baker, Kammerer asked to call Frost for the limited purpose of rebutting the testimony of the two witnesses. According to Kammerer, both Sams and Edmonds had testified inconsistently with statements they had previously made to Frost. Baker's counsel objected on the grounds that Frost had not been listed as a witness in any of the pretrial discovery materials submitted by Kammerer as required by CR 93.04. Kammerer's counsel responded that he had not disclosed Frost as a potential witness because he had not planned to call her until the alleged inconsistencies in the testimony of Sams and Edmonds surfaced at trial.

The trial court held a discussion in chambers to address the merits of Baker's objection and to decide whether Frost would be allowed to testify. During that discussion, Baker's counsel argued that Frost should not be allowed to testify because she had not been identified by Kammerer prior to trial. Baker's counsel also argued that if Frost was allowed to testify, he should be allowed to ask her questions about the nature of her involvement in the case, specifically her employment by Kammerer's insurer.

Kammerer's attorney countered that prior to hearing the testimony of Edmonds and Sams, he had no reason to believe Frost's testimony would be necessary. He further stated that inadequate discovery responses by opposing counsel had prevented him from contacting and interviewing witnesses, making inconsistencies in their testimony undiscoverable. Following this exchange, the trial court ruled that Frost would be allowed to testify, stating, "I'll allow her to testify, I think that forms a sufficient basis in the record."

The judge went on to advise counsel for both sides that no mention was to be made of Frost's employment by Kammerer's insurance company. Although Baker's attorney had specifically raised this issue,

arguing that Frost's cross-examination would necessarily involve questions regarding her employment, Kammerer's attorney did not even address this argument, concentrating instead on his primary request that Frost be allowed to testify. Nevertheless, the judge stated unequivocally, "And contrary to what counsel says, it will be a mistrial if you [disclose Frost's employer]. You just say, you can state the term 'investigator,' that's all that needs to be said. You don't have to go into anything else—investigator."

After this statement, Baker's attorney interrupted the judge in an attempt to explain the discovery violation that had been alleged by opposing counsel. The judge responded:

> I'm telling you why I'm making the ruling that I am. Had you spelled out in detail what they were going to say, I wouldn't be ruling this way, believe me. If you had spelled out in your exchange what they would have been saying—but because you didn't and because of the fact that these aren't anybody's witnesses as such, they don't belong to anybody. So, based upon that fact, I think *clearly counsel has the opportunity,* especially in light of the fact. . . of the representation of inconsistent statements.

(Emphasis added.) Although his remarks are somewhat ambiguous, when considered in context, the judge's explanation seems to be offered as a rationale for his primary ruling that Frost would be allowed to testify. In particular, the trial court's statement, highlighted above, that "clearly counsel has the opportunity" seems to refer specifically to that aspect of the dispute. After this statement, the parties returned to the courtroom and the trial resumed. Shortly thereafter, Frost testified regarding her previous meetings with Edmonds and Sams. As directed by the judge, neither party made any mention of Frost's employer, nor did they attempt to explain her role in the case. After Frost's testimony the defense rested.

Shortly after the jury began deliberating, they submitted two questions to the trial court. Those questions were "Who is Hope Frost?" and "What's her interest in this case?" The trial court informed the jury that it could not answer either of the questions. The jury continued its deliberations and ultimately returned a verdict for Kammerer. Baker filed a motion for a new trial, which was denied.

Baker then appealed to the Court of Appeals and specifically objected to the testimony of Hope Frost. Despite her claims of error, the Court of Appeals affirmed the judgment of the trial court, holding that it was not error to admit the testimony of Frost and that it was not an abuse of discretion to refuse requests by Baker's attorneys to be able to cross-examine Frost regarding potential bias stemming from her employment. We subsequently granted Baker's motion for discretionary review.

### III. ANALYSIS

■ In deciding Baker's direct appeal, the Court of Appeals addressed two alternate claims of error: (1) that the testimony of Hope Frost should not have been admitted, and (2) that Baker's attorney should have been permitted to cross-examine Frost regarding her employment as a means of showing her alleged bias. On this appeal, Baker has elected to pursue only the second claimed error.

■ At the outset we acknowledge the general rule that " '[t]he presentation of evidence as well as the scope and duration of cross-examination rests in the sound discretion of the trial judge. This broad rule applies to both criminal and civil

cases....'" *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky.1997) (quoting *Moore v. Commonwealth*, 771 S.W.2d 34, 38 (Ky.1988)); *see also Com., Dep't of Highways v. Smith*, 390 S.W.2d 194 (Ky. 1965) ("[T]he trial court is vested with a sound judicial discretion as to the scope and duration of cross-examination. Were this not so, any trial could be rendered a farce and mockery; witnesses could be insulted and threatened; juries would become exhausted and exasperated; justice could be frustrated and thwarted."). But we also note that:

> Opportunity for cross-examination of witnesses is seen as indispensable to the search for truth in litigation .... The Evidence Rules say nothing about a "right" to cross-examination, perhaps because nothing needs to be said about a practice so fundamental to the litigation process. KRE 611(b) addresses the subject of "scope of cross-examination" but undoubtedly contemplates that litigants will be given an opportunity to subject evidence to the cleansing and clarifying process of cross examination.

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 3.20[3], at 239 (4th ed.2003) [hereinafter Lawson, *Kentucky Evidence*].

■ Likewise, we have held that "[t]he credibility of a witness' relevant testimony is always at issue and the trial court may not exclude evidence that impeaches credibility even though such testimony would be inadmissible to prove a substantive issue in the case." *Sanborn v. Commonwealth*, 754 S.W.2d 534, 545 (Ky.1988). "A wide array of evidence is admissible only because it renders testimonial credibility more probable or less probable than it would be without the evidence." Lawson, *Kentucky Evidence* § 5.05[3], at 82. This language illustrates one of the most crucial goals of cross-examination, namely, expos-

ing the bias of an opposing witness. Ultimately, the law favors admissibility of evidence of bias.

Though decided prior to our adoption of the rules of evidence, our predecessor court traditionally allowed the introduction of insurance evidence to show the bias of a witness. *See, e.g., Nunnellee v. Nunnellee*, 415 S.W.2d 114, 116 (Ky.1967) ("We have held that it is proper to show, as here, that a witness represents an insurance company in order to disclose his possible bias."). The admissibility of evidence of insurance coverage would seem to have been complicated by the enactment of KRE 411, which prohibits the admissibility of evidence of a defendant's liability insurance to prove negligence or fault. However, the rule provides certain exceptions to this prohibition, in essence, retaining those recognized at common law. The rule states:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. *This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose*, such as proof of agency, ownership, or control, or *bias or prejudice of a witness*.

KRE 411 (emphasis added).

■ While a decision as to the admissibility of such evidence still rests within the discretion of the trial judge, that discretion is not limitless. The law favors the admission of evidence that is relevant to a jury's determination of a witness's credibility. As with most evidentiary decisions, the trial court's discretion in this area stems from its gatekeeping function under KRE 403. As noted by Professor Lawson, "protection against excessive use of the 'other purposes' clause of Rule 411 is provided by Rule 403, which requires a balancing of

probative value against undue prejudice." Lawson, *Kentucky Evidence*, § 2.60[3], at 210. This approach was specifically adopted in *Wallace v. Leedhanachoke*, 949 S.W.2d 624 (Ky.App.1997), where the Court of Appeals held that the trial court had not abused its discretion in prohibiting the introduction of KRE 411 "other purposes" evidence which alleged bias of an expert witness due to the commonality of insurance carriers between a physician defendant and the expert. In affirming the decision to exclude the evidence, the Court of Appeals noted, "we adopt the balancing test [of KRE 403] to allow trial courts to exercise their broad discretion on a case-by-case basis." *Id.* at 628.

In this case, the identity of Hope Frost's employer went to the heart of her potential bias and would likely have been crucial to the jury's assessment of her credibility. It is clear from their questions to the judge that Frost's identity was particularly important to the jurors who decided the case. Having been presented evidence that the incident had been investigated by police, the jurors were forced to consider Frost's testimony, without any explanation of her involvement in the case or her role as an "investigator." And it is possible, perhaps even likely, that the trial court's instruction to use the term "investigator" to describe Frost not only prevented the jury from knowing the truth but may actually have misled it about Frost's interest in the case.

Given the fundamental importance of the ability to cross-examine as to bias and the trial court's apparent failure to engage in any meaningful analysis under Rule 403 before prohibiting cross-examination as to Frost's employment, we conclude that the trial court abused its discretion in this case. In reaching this conclusion, however, we must also note that we are not mandating the disclosure of evidence relating to insurance in every case like the one before us. To the contrary, our holding still recognizes the trial court's inherent discretion over evidentiary questions such as this one. Because a multitude of factors may be considered by a trial judge addressing such an issue, judges are free to consider a spectrum of potential remedies. In an appropriate case, a judge might reasonably conclude that insurance evidence should be freely admitted. Another judge might choose a middle ground, allowing the identification of a witness as an agent of the defendant, but refusing to allow the disclosure that a defendant is insured. Likewise, applying the balancing test of KRE 403 might lead to the conclusion that certain insurance evidence is inadmissible. *See, e.g., Wallace*, 949 S.W.2d at 628.

That being said, it is hard to imagine any case involving circumstances similar to these in which a trial court decision that completely shields the jury from evidence of possible bias would not be an abuse of discretion. As noted above, dual concerns—the general inclusionary thrust of the Rules of Evidence and the more particular preference to allow evidence of bias— weigh heavily in favor of admissibility. Absent unusual circumstances wherein the evidence would be either extremely prejudicial or minimally probative, the principal question is the scope of the evidence of bias to be allowed. As with the broader question of initial admissibility, the balancing test of KRE 403 provides a useful tool for determining the scope of the evidence to be admitted. Therefore, on retrial, the trial court shall be guided by KRE 403 to determine whether Frost shall be identified as an agent of Defendant, an employee of the insurance carrier, or otherwise.

Kammerer argues that the trial court properly exercised its discretion in limiting the scope of Frost's cross-examination,

contending that the court's ruling operated as a quasi-sanction for Baker's alleged discovery violation. Having reviewed the record, however, it seems more likely that the trial court's reference to discovery deficiencies was offered as justification for its ruling on the ultimate question of whether Frost would be allowed to testify—not to the more limited question as to the scope of her cross-examination. Even if Kammerer is correct, however, such a violation is not a proper basis for limiting the scope of cross-examination to exclude evidence of possible bias because a discovery violation has little significance to the factors to be considered under the KRE 403 balancing test.

■ A trial judge may always exclude evidence when its probative value is substantially outweighed by its risk of undue prejudice. Normally, we would even assume that admitted evidence has been subjected to this balancing test. However, the record in this case suggests the trial court did not engage in the KRE 403 analysis. When the possibility that Frost might be called as a witness was first raised, the judge clearly signaled his intention to exclude any mention of Frost's role as an insurance agent by stating, "you don't have to identify [Frost], she's just a person the witness spoke to." Such a statement suggests the trial court employed a rigid, *per se* exclusion of any evidence of insurance as opposed to the flexible, case-by-case approach required by KRE 403 once one of the "other purposes" exceptions of KRE 411 is met.

## IV. CONCLUSION

The trial court's refusal to allow Baker to cross-examine Frost as to her possible bias was an abuse of discretion and is sufficient to warrant a new trial. Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded to the Campbell Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J.; GRAVES, and JOHNSTONE, JJ., concur.

COOPER, J., dissents by separate opinion in which SCOTT and WINTERSHEIMER, JJ., join.

Dissenting opinion by Justice COOPER.

There were five eyewitnesses to this pedestrian/automobile accident. Plaintiff/Appellant, Amanda Baker, and three other teenage girls, Leah Edmonds, Aleisha Sams, and Tamara Thibodeaux, were pedestrians intending to cross Carothers Road at its intersection with Monmouth Street in the city of Newport. Defendant/Appellee, Theresa Kammerer, was operating her vehicle from east to west on Carothers Road. Baker stepped into the intersection and was struck by Kammerer's vehicle. Kammerer testified that the traffic light was green for traffic on Carothers Road. Baker, Edmonds, Sams, and Thibodeaux all testified that the traffic light was red for traffic on Carothers Road. Sams testified that she saw Kammerer's vehicle approaching and stretched out her arms to prevent Edmonds and Thibodeaux from stepping into the intersection; unfortunately, her reach did not extend to Baker. The jury obviously believed Kammerer and disbelieved Baker, Edmonds, Sams, and Thibodeaux. The majority of this Court now reverses this case for a new trial solely because the trial court did not permit Baker's trial counsel to tell the jury that Hope Frost, an impeachment witness for Kammerer, was an employee of Kammerer's liability insurer.

When Kammerer's trial counsel announced his intent to call Frost as a witness, Baker's counsel asked for an in-chambers hearing, at which he objected on grounds that Frost had not been listed as

a witness on Kammerer's pre-trial "exchange of information." Counsel then stated that if Frost were permitted to testify, "that would open the door to discussing where she works, who she works for, and I think that would certainly not help their case because then the jury would know they were dealing with an insurance company, in fairness to the defendant, and they have to explain somehow where this lady comes from." At no time did counsel claim during either the bench conference prior to opening statements or in the chambers conference on this issue that his reason for wanting to identify Frost as an employee of Kammerer's insurer was to show her bias as a witness. Kammerer's trial counsel then explained that Frost had not been listed on the exchange of information because he had not expected Edmonds and Sams to testify that the traffic light was red for traffic on Carothers Road. After hearing these arguments, the trial court ruled that Kammerer could call Frost as a witness and "contrary to what counsel says, it will be a mistrial if you do it [identify Frost as an insurance representative]; you can state that she's an investigator." Obviously, the trial court's ruling was in response to counsel's argument that "they have to explain somehow where this lady comes from," and not in response to an unspoken claim that the evidence was admissible to show bias.[1]

On direct examination, Frost testified that she had separate telephone conversations with Edmonds and Sams and that Sams told her that she was not in a position to see the color of the traffic light. On cross-examination, Baker's attorney asked Frost to produce her notes of her conver-

sations with Edmonds and Sams and told her to "give those to your attorney and let him look at them first," whereupon Frost left the witness stand, retrieved her notes, and handed them to Kammerer's attorney who, with the trial court's permission, tore off a portion of Frost's notes that reflected a settlement offer—all in the presence of the jury. Thus, the jury learned that Kammerer's attorney was also Frost's attorney and that their relationship was such that he could destroy a portion of Frost's notes. Baker's counsel then elicited from Frost that her notes *did not* reflect the statement allegedly made to her by Sams, and that they *did* reflect that Edmonds told her that the light was red for traffic on Carothers Road. (!)

KRE 611(b) permits the trial court, "[i]n the interests of justice," to limit cross-examination with respect to matters not testified to on direct examination. KRE 411 *"does not require* the exclusion of evidence of insurance ... when offered for another purpose, such as proof of ... bias or prejudice of a witness." (Emphasis added.) However, neither does it require the *admission* of such evidence—especially where, as here, the trial court was never advised that it was being offered for that purpose. Even if the trial court had been advised of the "other purpose" for introducing the evidence, the trial court was required to weigh the probative value of the evidence against its prejudicial effect. KRE 403; *Wallace v. Leedhanachoke,* 949 S.W.2d 624, 626–28 (Ky.App.1996). Here, Frost was not a substantive witness offering direct evidence relevant to prove who was at fault. *Compare Triplett v. Napier,* 286 S.W.2d 87, 88–89 (Ky.1956) (witness was engineer/architect retained by insur-

---

1. The trial court's subsequent explanation that he "would not be ruling this way" if Baker had filed a more complete exchange of information obviously related to his decision to permit Frost to testify even though she had not been listed on Kammerer's exchange of information.

ance company to testify to measurements he made and to safety of allegedly defective stairway); *Lexington Glass Co. v. Zurich Gen. Accident & Liab. Ins. Co.*, 271 S.W.2d 909, 911 (Ky.1954) (witness testified to measurements he made at the accident scene). Frost was only an impeachment witness—and her testimony only marginally impeached one of three eyewitnesses who testified for the plaintiff. She did not testify that Sams told her the light was green for traffic on Carothers Road (which would have tended to prove fault), but only that Sams told her that she was not in a position to see the light (which tended only to impeach Sams's credibility). Under these circumstances, the trial court did not abuse its discretion in finding that the probative value of showing Frost's implied bias was substantially outweighed by the prejudicial effect of interjecting evidence of liability insurance into the case.

Although the majority opinion assumes that Baker's counsel had an unexpressed "other purpose" of seeking to prove the nature of Frost's employment in order to show bias, it declines to assume that the trial judge conducted the KRE 403 balancing test because he did not expressly articulate such on the record when making his ruling. Of course, that does not mean that he did not conduct the test *sub silentio* while listening to the arguments of counsel. If we are going to reverse for a new trial every case in which a trial judge either admits or excludes evidence without specifically stating on the record that "the probative value of this evidence [is] [is not] substantially outweighed by its prejudicial effect," then we are going to clog our trial dockets with unnecessary retrials of cases that were fairly and properly tried in the first place. Until today, we have assumed for purposes of review that trial courts do conduct the KRE 403 balancing test and admit or exclude evidence on that basis, which we then review for abuse of discre-

tion. In more than nine years on this Court, I can recall reviewing only one trial videotape in which the trial court specifically articulated the KRE 403 balancing test on the record. (Furthermore, I do not recall in my almost eighteen years as a trial judge ever personally articulating the KRE 403 balancing test on the record—or ever having a case reversed because of my failure to do so.)

In addition to all of the above, Baker's attorney did, in fact, inform the jury that Frost was biased in favor of the defense by referring to Kammerer's attorney as "your [Frost's] attorney." In that respect, the facts of this case are similar to those in *Herbold v. Ford Motor Co.*, 310 Ky. 697, 221 S.W.2d 646 (1949), also a pedestrian/automobile collision case. The plaintiff in *Herbold* was attempting to cross a six-lane boulevard at an intersection governed by a traffic light. The light was red for traffic on the boulevard when she began to cross but apparently turned green before she reached the other side. She was struck by the defendant's pickup truck as she attempted to dodge traffic in an effort to reach the sidewalk. A witness for the plaintiff testified that the defendant had passed him at a high rate of speed just prior to the accident. An associate attorney in defense counsel's law firm then impeached that testimony by producing a written statement that he had obtained from the witness prior to trial in which the witness had stated only that the plaintiff was struck while attempting to run across the highway in the middle of the block. The attorney admitted that he was associated with the law firm representing the defendant. The trial court overruled the plaintiff's motion to be allowed to also show that the attorney's law firm was being paid by the defendant's liability insurer. *Id.*, 221 S.W.2d at 649. Our predecessor court held that since the witness had

already admitted his connection with the defendant, "the rejection of the proffered evidence was not a prejudicial error." *Id.* At worst, I would reach the same conclusion in this case, though I find no error at all.

Accordingly, I dissent and would affirm both the trial court and the Court of Appeals.

SCOTT, and WINTERSHEIMER, JJ., join this dissenting opinion.