**Debbie CHILDERS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–SC–000297–MR.

Supreme Court of Kentucky.

Dec. 16, 2010.

As Modified on Denial of Rehearing March 24, 2011.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Heather Michelle Fryman, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Debbie Childers appeals from an April 14, 2009, Judgment of the Lawrence Circuit Court convicting her of complicity to trafficking in a controlled substance in the first degree. Finding Childers to be a second-degree persistent felony offender (PFO 2), the jury enhanced her sentence from ten to twenty years' imprisonment; and the trial court sentenced her accordingly. Childers raises three issues on appeal: (1) the trial court erred when it ruled she could not invoke Kentucky Rules of Evidence (KRE) 608(b) to inquire into the nature of confidential informant Thomas Osborne's prior felony convictions; (2)

the Commonwealth's Attorney and Detective Wireman impermissibly interpreted the drug buy tape; and (3) there was insufficient evidence to support her conviction. We find no error on the first and third claims. Regarding the second claim, we find the Commonwealth's Attorney's comments on the tape were proper; but Wireman's interpretations were impermissible. However, the unpreserved error is not palpable and so does not require a reversal. Accordingly, we affirm.

### RELEVANT FACTS

On September 3, 2008, Detectives Justin Wireman and Neil Adams of Operation UNITE anti-drug task force were working with a confidential informant, Thomas Osborne, to make drug buys in Louisa, Kentucky. Osborne testified that on September 3rd he called Childers to "see if she could get anything (drugs)." Childers told Osborne she could get him "Oxycodone 15s" for twenty dollars apiece. Osborne and Childers made arrangements to immediately meet at a local car wash. On the way to the car wash, the detectives searched Osborne and equipped him with a wire, a recording device and $100 of photographed buy money. Because this preparation took longer than anticipated, Osborne made a second call to Childers to assure her he was on his way. In a taped conversation with the police at the police station, Childers admitted she was the one who talked with Osborne on the phone, made the arrangements and drove herself, Chad Johnson, a participant in the drug transaction, and others to the car wash.

Osborne testified that at the car wash he gave Childers the $100 of buy money and, upon receiving the money, Childers asked him "if there was a hundred dollars there." Testimony by Detective Wireman and Osborne and the buy tape reveal Childers then handed something to Johnson. Osborne testified that Childers handed the pills to Johnson, who then gave them to Osborne. The defense argued it is not possible to discern from the tape exactly what Childers handed to Johnson and that it was actually a handful of coins. After the transaction, the police recovered from Childers the $100 buy money and, from Osborne, the five pills he received from Johnson. The Kentucky State Police Laboratory confirmed the pills were Oxycodone.

Childers was charged with complicity to first-degree trafficking in a controlled substance and being a second-degree PFO. At the close of the Commonwealth's case, Childers moved for a directed verdict based on insufficiency of the evidence. The trial court denied the motion. Childers did not present any evidence but did renew her motion for a directed verdict. The trial court again denied the motion. The jury found Childers guilty of complicity to trafficking in a controlled substance in the first degree. She received ten years for the complicity conviction, which was enhanced to twenty years because of the second-degree PFO. Childers brings this appeal as a matter of right. Ky. Const. § 110(2)(b). We begin our review with Childers's claim that the trial court erred when it ruled she could not inquire into the nature of Osborne's prior felony convictions.

### ANALYSIS

I. **The Trial Court Did Not Abuse its Discretion by Refusing Inquiry into the Nature of Osborne's Prior Felony Convictions.**

■ Detective Wireman, the Commonwealth's first witness, testified about obtaining Osborne's assistance with Operation UNITE and about his role in the September 3rd drug buy. On cross-examination, Childers sought to discredit Os-

borne by asking Detective Wireman the nature and detail of Osborne's prior felony convictions. The questioning proceeded as follows:

> Defense Counsel: You also did a Personal History and Conduct of Confidential Witness [form for Thomas Osborne], correct?
>
> Detective Wireman: Yes, sir.
>
> Defense Counsel: And it revealed that he had previously been convicted of several felonies, correct?
>
> Detective Wireman: I don't have it in front of me. I believe he did have a felony [inaudible].
>
> Commonwealth's Attorney: Objection.
>
> Judge: Overruled.
>
> Defense Counsel: And do these felonies involve crimes of dishonesty?
>
> Detective Wireman: I can't remember what he was actually charged with on any of them.
>
> Commonwealth's Attorney: Your Honor, can we approach?

At this point, a bench conference ensued, during which the Commonwealth's Attorney argued that defense counsel could ask whether Osborne was a prior convicted felon but could not inquire further. Defense counsel countered he should be allowed to inquire further if the crimes were crimes of dishonesty because they would reflect on Osborne's credibility. The trial court agreed with the Commonwealth and ruled that defense counsel could do no more than establish that Osborne was a convicted felon. Defense counsel preserved the issue for appeal by obtaining Detective Wireman's testimony by avowal.

■ This Court reviews a trial court's decision regarding the admissibility of evidence for abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). A trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

■ We conclude that the trial court did not abuse its discretion when it disallowed Childers's inquiries into the nature of Osborne's convictions. Childers concedes such inquiry is not permitted under KRE 609, but maintains it may be conducted under KRE 608(b). KRE 608(b) provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

However, KRE 609(a) provides:

For the purpose of reflecting upon the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record if denied by the witness, but only if the crime was punishable by death or imprisonment for one (1) year or more under the law under which the witness was convicted. The identity of the crime upon which conviction was based may not be disclosed upon cross-examination unless the witness has denied the existence of the conviction. However, a witness against whom a conviction is admitted under this provision may

choose to disclose the identity of the crime upon which the conviction is based.

Childers argues KRE 608(b) allows questioning as to the nature and details of a witness's prior conviction if the conviction is probative of the witness's character for truthfulness or untruthfulness. Childers maintains this is true even though the conviction itself is not admissible under KRE 609. We do not agree. KRE 608(b) permits impeachment only by specific instances of conduct that have not resulted in a conviction while evidence relating to impeachment by criminal conviction is governed solely by KRE 609.

We begin our analysis by noting that the interplay between Rules 608 and 609[1] is complex. *See United States v. Cudlitz*, 72 F.3d 992, 995 (1st Cir.1996) ("The rules governing this subject—cross-examining a criminal defendant about prior wrongs— are among the most complex and confusing in the entire law of evidence."); DONALD H. ZIEGLER, *HARMONIZING RULES 609 AND 608(B) OF THE FEDERAL RULES OF EVIDENCE*, 2003 Utah L.Rev. 635 (2003). As there is little Kentucky law on this question, we write today to clarify and settle the issue.

This question was touched upon previously in *Fields v. Commonwealth*, 274 S.W.3d 375 (Ky.2008), wherein this Court held that the trial court did not abuse its discretion when it refused to allow the defendant to cross-examine two of the Commonwealth's witnesses about their misdemeanor convictions. *Fields*, 274 S.W.3d at 399, 400. On appeal, the defendant admitted KRE 609(a) barred the introduction of the misdemeanor convictions, but argued that because the misdemeanor crimes bore on the credibility of the wit-

nesses they were admissible under KRE 608(b). *Id.* Without delving into the relationship between KRE 609(a) and KRE 608(b), we upheld the trial court's rulings, finding the trial court had properly exercised the discretion granted it under KRE 608(b) to determine when to admit specific instances of conduct concerning a witness's character for truthfulness. *Id.* It is true that KRE 608(b) grants the trial court such discretion. However, that is a secondary question. The more fundamental question, which we did not address in *Fields*, is whether criminal convictions, and the conduct giving rise to them, even come within the purview of KRE 608(b). Although we have not addressed this question previously, our rules were modeled closely upon the corresponding federal rules, and so we find it helpful to consider how the federal courts have viewed this matter.

A majority of the federal Circuit Courts make a distinction between specific instances of conduct that lead to a criminal conviction and those in which there has been no conviction. The former are governed exclusively by Rule 609, the latter by Rule 608. That is, Rule 608 applies only to specific acts of conduct that have not resulted in a criminal conviction. *United States v. Osazuwa*, 564 F.3d 1169, 1173 (9th Cir.2009) ("Rule 608 applies *only* to specific instances of conduct that were *not the basis of a criminal conviction.* Evidence relating to a conviction ... is treated *solely* under Rule 609." (emphasis added)); *United States v. Lightfoot*, 483 F.3d 876, 881 (8th Cir.2007) ("Rule 608(b) ... confers upon district courts discretion to permit witness-credibility questioning on specific bad acts *not resulting in a*

---

1. Both KRE 608 and 609 are significantly similar to their federal counterparts and the discrepancies which exist do not affect our analysis here. KRE 608 essentially mirrors

Federal Rule of Evidence (FRE) 608. While the language in KRE 609 and FRE 609 varies in some places, the thrust of the rules, especially as it concerns this issue, is the same.

*felony conviction.*" (emphasis added)); *United States v. Whitmore,* 359 F.3d 609, 618–20 (D.C.Cir.2004) ("Cross-examination pursuant to Fed.R.Evid. 608(b) is not confined to prior criminal convictions—*they are governed by Fed.R.Evid. 609* . . . Furthermore, the government's suggestion that inquiry under Fed.R.Evid. 608(b) should be limited to a prior perjury conviction would make Fed.R.Evid. 609 superfluous. Fed.R.Evid. 608(b) allows a witness's credibility to be attacked based on misconduct that, *while not constituting a criminal conviction,* nevertheless tends to show that the witness is untruthful." (emphasis added)); *United States v. Parker,* 133 F.3d 322, 327 (5th Cir.1998) ("Prior bad acts that *have not resulted in a conviction* are admissible under 608(b) if relevant to the witness's character for truthfulness or untruthfulness." (emphasis added)); *United States v. White,* 113 F.3d 1230, 1997 WL 279972, at *5 (2d Cir. May 23, 1997) (finding the applicable rule is 608(b) "because *there was no conviction* in the earlier case." (emphasis added)); *United States v. Smith,* 80 F.3d 1188, 1193 (7th Cir.1996) ("[T]he plain language of the rule [FRE 608(b)] allows for cross-examination of matters *'other than conviction of crime.'*" (emphasis added)); *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1556 (10th Cir.1991) ("Under Fed.R.Evid. 608(b), a defendant may impeach a . . . witness by cross-examining him about specific instances of conduct *not resulting in conviction* if such conduct is probative of the witness' character for truthfulness or untruthfulness." (quoting *United States v. Morales–Quinones,* 812 F.2d 604, 613 (10th Cir.1987) (emphasis added))); *United States v. Hicks,* 841 F.2d 1123, 1988 WL 16940, at *1 (4th Cir. Jan.27, 1988) (stating FRE 608(b) allows impeachment of a witness by "proof of specific acts of misconduct which *did not result in conviction.*" (emphasis added)).

Support for this construction of Rules 608(b) and 609 can also be found in the legislative history of the Federal Rules of Evidence. The Advisory Committee Note (ACN) provides, "Particular instances of conduct, though *not the subject of criminal conviction,* may be inquired into on cross-examination. . . ." Fed.R.Evid. 608 advisory committee's note (1972) (emphasis added). The ACN also clarifies that the phrase in Rule 608(b) that is the root of much of the confusion on this issue—"other than conviction of crime as provided in Rule 609"—is not meant to bring convictions within the purview of Rule 608 or make open to question their nature and detail. *Id.* Rather, that phrase was included in Rule 608 as mere recognition of the fact that impeachment by conviction of a crime, which is treated in Rule 609, is an exception to the general rule excluding evidence of specific incidents for impeachment purposes. *Id.* These comments indicate that impeachment by conviction of a crime is to be accomplished under Rule 609, not Rule 608.

We also take note of several secondary sources that support this interpretation of Rules 608 and 609. While in no way binding on this Court, these sources are illustrative. The leading treatise FEDERAL PRACTICE AND PROCEDURE explicitly and repeatedly states that evidence of criminal convictions is governed solely by Rule 609.

> Rule 608 does *not* regulate the admissibility of criminal conviction evidence, which is the subject of Rule 609 . . . Subdivision (b) [of Rule 608] *specifically exempts* from its coverage evidence of specific instances of witness conduct in the form of criminal convictions. The admissibility of such evidence is determined by Rule 609 . . . Of course, the first sentence of subdivision (b) [of Rule 608] specifically states that the admission of such evidence [convictions] is determined under Rule 609, *not Rule 608.*

28 Charles Alan Wright & James Victor Gold, *Federal Practice and Procedure* §§ 6111 n. 1, 6113, 6117 (1993) (emphasis added). Noted criminal law professor H. Richard Uviller has advocated for a position different than what we adopt today; and yet, he still acknowledges that Rule 608 plainly states that criminal convictions are governed by Rule 609. H. Richard Uviller, *Credence, Character, and the Rules of Evidence: Seeing Through the Liar's Tale*, 42 Duke L.J. 776, 804 (1993). As he has succinctly stated, "[T]he language of Rule 608(b) appears to exclude, explicitly, instances of dishonest conduct that result in criminal convictions." *Id.*

The approach taken by these federal courts is also in keeping with sound public policy and core principles of the Kentucky Rules of Evidence. Our rules of evidence acknowledge the importance of evidence relevant to a witness's credibility but also recognize the need to protect a witness, especially a defendant who takes the stand, from having all of his or her prior criminal acts detailed for the jury. As our rules are currently interpreted, evidence of other crimes, wrongs, or acts is admissible only for specific enumerated purposes, such as proof of opportunity, plan, or accident and, in a criminal case, are admissible only when the prosecution gives the defendant pretrial notice of its intention to offer such evidence at trial. KRE 404(b) and (c). In addition, a witness may be impeached by evidence of a felony conviction;[2] but the identity of the crime can be disclosed only if the witness denies the conviction or chooses to inform the jury of the identity of the crime. KRE 609(a). Further, when a witness is impeached by a prior felony conviction, the party offering the witness is entitled to an admonition.

Thus, Kentucky trial judges routinely inform the jury not to consider the felony conviction for any purpose other than whatever bearing it may have on the person's truthfulness as a witness and the weight to be given his testimony. Where the witness is the defendant, the jury is specifically admonished not to consider the prior conviction as evidence of the defendant's guilt in the pending case. This admonition underscores a fundamental principle that the dissent fails to acknowledge, *i.e.*, the fact of a felony conviction is, in and of itself, powerful evidence that reflects on truthfulness.

If the facts and details underlying criminal convictions were to be admissible under KRE 608(b), it would essentially provide an end-run around these rules, rendering them largely ineffective, and would greatly alter the careful manner in which our rules have heretofore provided for the use of evidence of prior crimes. If we read KRE 608(b) the way Childers proposes, a witness would be blindsided by the introduction of his prior criminal acts, a particularly harmful consequence if the defendant is on the stand. The carefully crafted pretrial notice provisions in KRE 404(c) would simply not be applicable. Also, under this reading of the rule, the prosecutor could set out numerous instances of a witness's prior criminal conduct, always avoiding the identity and number of convictions and, thus, preventing the jury from ever knowing the witness was punished for his crimes. This "half picture" would give a skewed view of the administration of justice and, in the case of a defendant testifying, create the very real possibility that the current jury would find it easy to punish the defendant for prior conduct for which he seem-

---

**2.** KRE 609(a). The specific language of Rule 609 is crimes "punishable by death or imprisonment for one (1) year or more." Thus, under Rule 609, evidence of a misdemeanor conviction can never be admitted.

ingly avoided any criminal consequences. A more stark illustration involves a defendant who testified on his own behalf in a previous trial, denying the charged offense, but who was nonetheless convicted and sentenced. Under Childers's reading of the rule, the prosecution could use this very fact against the defendant in the current case as a specific instance of untruthful conduct. Pursuant to KRE 608(b), the prosecutor could establish the defendant was a convicted felon and then elicit that he had testified at his own trial denying any criminal responsibility. Without any further questioning, the present jury could (and would) conclude the defendant was untruthful.[3]

Because KRE 608(b) requires the conduct bear on truthfulness or untruthfulness, the dissent maintains that only a handful of crimes would qualify for admission; and, thus, we overstate the effect of allowing criminal conduct to be admitted under KRE 608. However, we find little solace in this limitation because of the likely possibility that a person will engage in conduct that bears on truthfulness in the commission of a crime that does not itself bear on truthfulness. For example, rape and murder are not crimes that bear on truthfulness; but it is not uncommon for an offender to lie to a victim in order to perpetrate rape or knowingly use a stolen gun to commit murder.

While it may seem harsh to bar inquiry into an act bearing on a witness's truthfulness simply because it resulted in a conviction, as noted, the fact of a conviction can be more prejudicial than the fact or allegation of a criminal act that never resulted in a conviction. *See, e.g., Osazuwa,* 564 F.3d at 1174. The Kentucky Rules of Evidence manage this prejudice by providing careful controls for when and how a conviction may be admitted. We will not undermine these safeguards by permitting evidence of prior criminal acts to come in through the "back door" of KRE 608. Although KRE 608(b) is hardly an example of careful, clear draftsmanship, the interpretation proposed by Childers and the dissent would produce an ill-advised sea change in the admissibility of evidence of prior crimes. For the foregoing reasons, we hold that KRE 608 permits impeachment only by specific acts that have not resulted in a criminal conviction. Evidence relating to impeachment by criminal conviction is governed solely by KRE 609. To the extent *Fields* may be read to imply otherwise, it is overruled.

 In the present case, Childers sought to impeach Osborne by cross-examining Detective Wireman on the nature of Osborne's previous convictions. The trial court correctly sustained the Commonwealth's Attorney's objection to the introduction of this evidence because this evidence is not admissible under KRE 608.[4] Nor is it admissible under KRE 609, which requires the cross-examiner question the witness about his own convictions. KRE 609(a). Here, defense counsel cross-examined Detective Wireman about Osborne's convictions, which is not sanctioned by

---

3. The gravest concerns arise when the witness is the defendant on trial so some of these scenarios could be avoided by drawing a distinction between a witness and a defendant-witness. However, our current rules do not allow for that distinction.

4. Even if we held that convictions are admissible under KRE 608(b), Childers's evidence would still not be admissible. Assuming, *arguendo,* that the facts underlying a conviction may be admitted under KRE 608(b) if they are probative of truthfulness or untruthfulness, Childers could still not inquire into Osborne's convictions because Detective Wireman never testified to Osborne's honest character, as required by KRE 608(b)(2).

KRE 609.[5] KRE 609; *see Richardson,* 674 S.W.2d at 517–18. As such, the trial court did not abuse its discretion by disallowing inquiry into the nature of Osborne's convictions.

## II. The Commonwealth's Attorney's Comments on the Drug Buy Tape Were Permissible and Detective Wireman's Impermissible Interpretation of the Tape Did Not Rise to the Level of Palpable Error.

Appellant argues that both the Commonwealth's Attorney and Detective Wireman impermissibly interpreted the drug buy tape. In her opening statement, the prosecutor told the jury that on the tape it would hear Childers ask Osborne, "Is that a hundred?" referring to the buy money. She then told the jury, "[Y]ou have to listen for that … you have to listen closely to hear Debbie say … 'Is that a hundred?'" During direct examination of Detective Wireman, the Commonwealth's Attorney played the drug buy tape for the jury and then asked Detective Wireman if he had heard what Childers said on the tape. Detective Wireman responded, "She took one hundred dollars from Thomas and she said, 'Is that a hundred?'" During closing arguments, the prosecutor played the video again and told the jury it would hear Childers say, "Is that a hundred?"

Although the Commonwealth's Attorney's comments about the tape were proper comments on the evidence, Detective Wireman impermissibly interpreted the drug buy tape. However, reversal is not required because this unpreserved error did not bear upon Childers's substantial rights or create a manifest injustice as required to satisfy our palpable error standard. RCr 10.26.

### A. The Commonwealth's Comments on the Drug Buy Tape Were Proper Comments on the Evidence.

We will reverse for prosecutorial misconduct to which the defendant did not object if the misconduct rendered the trial fundamentally unfair. *Brown v. Commonwealth,* 313 S.W.3d 577, 627 (Ky. 2010); *Slaughter v. Commonwealth,* 744 S.W.2d 407, 412 (Ky.1987). While the prosecutor has a duty to confine his or her argument to the facts in evidence, *Caretenders, Inc. v. Commonwealth,* 821 S.W.2d 83, 89 (Ky.1991), the prosecutor is entitled to draw reasonable inferences from the evidence, make reasonable comment upon the evidence and make a reasonable argument in response to matters brought up by the defendant, *Hunt v. Commonwealth,* 466 S.W.2d 957, 959 (Ky.1971). *See also Wheeler v. Commonwealth,* 121 S.W.3d 173, 180 (Ky.2003). Further, a prosecutor is given wide latitude in making arguments to the jury, *Williams v. Commonwealth,* 644 S.W.2d 335, 338 (Ky.1982), and may "appeal to the jury with all of the power, force, and persuasiveness which his learning, skill, and experience enable him to command," *Housman v. Commonwealth,* 128 Ky. 818, 110 S.W. 236 (1908).

In the present case, there was no prosecutorial misconduct as the Commonwealth's Attorney did no more than make

---

**5.** Osborne later took the stand; and defense counsel asked him on cross-examination, "You're a twice-convicted felon. Third time is your magic number, isn't it?" Osborne answered affirmatively. No further inquiry was made into Osborne's convictions. However, if defense counsel had attempted to do so, such inquiry would be barred by KRE 609.

*See also Commonwealth v. Richardson,* 674 S.W.2d 515, 517–18 (Ky.1984) ("[A] witness may be asked if he has been previously convicted of a felony. If his answer is "Yes," that is the end of it … Identification of the prior offense or offenses, before the jury, by either the prosecution or defense, is prohibited.").

reasonable comments on the evidence. Thomas Osborne testified that when he gave Debbie Childers the $100 buy money at the car wash she asked him "if there was a hundred dollars there." Osborne's testimony from recollection was permissible and constituted evidence that Childers asked whether the money he handed her was one hundred dollars. The Commonwealth's Attorney did not exceed the bounds of propriety in commenting on this evidence in her opening statement and closing arguments.

### B. Detective Wireman Impermissibly Interpreted the Drug Buy Tape.

As for Detective Wireman's comments, the law on this issue is quite clear. While a witness is permitted to testify from recollection about events captured on tape, he may not interpret what is on the tape. *Gordon v. Commonwealth,* 916 S.W.2d 176, 179–80 (Ky.1995) ("As with any participant in a conversation, the informant witness was entitled to testify as to his recollection of what was said … [I]t is apparent that the witness purported to interpret the tape recording rather than testify from his recollection. This was in error."). When a witness interprets what is on a tape he impermissibly invades the province of the jury, which is vested with the responsibility and duty of making determinations of fact based on the evidence. *Cuzick v. Commonwealth,* 276 S.W.3d 260, 265–66 (Ky.2009); *Gordon,* 916 S.W.2d at 180 ("It is for the jury to determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness.").

The trial court erred by allowing Detective Wireman to interpret the videotape. Though Detective Wireman was present at the drug buy, he was sitting in a car at a distance and could not hear firsthand what Childers said to Osborne. As such, his testimony was not from personal recollection. It was in response to the Commonwealth's Attorney's question as to what Detective Wireman heard Childers say on the tape and, thus, was improper interpretation of the tape. *See, e.g., Gordon,* 916 S.W.2d at 180 (finding the witness did not testify from recollection but interpreted the tape in error when, after the tape was played, the witness was asked what he said on the tape and he answered, "I said, alright, I sure thank you, Maurice.").

While it was improper for Detective Wireman to interpret the tape, Childers did not object to him doing so, and we find the unpreserved error was not sufficient to warrant a reversal. Under RCr 10.26 we may grant relief for an unpreserved error only when the error is (1) palpable, (2) affects the substantial rights of a party, and (3) has caused a manifest injustice. *Commonwealth v. Jones,* 283 S.W.3d 665, 668 (Ky.2009).

In the present case, the tape itself was played for the jury several times during trial and was admitted into evidence, thus allowing the jurors numerous opportunities on their own to hear and evaluate the tape. The defense counsel pointed out in his opening statement that he had listened to the tape and never had heard "anything about a hundred. I listened to it and listened to it, but that's for you all to make a fact finding." Osborne testified from recollection as to all the events on the tape and the jury had sufficient opportunity to observe him, determine his credibility, and decide what weight to give his testimony. Further, there was sufficient additional evidence to support the conviction. The testimony of both detectives, Osborne, and a recorded statement by Childers showed Childers took both phone calls from Osborne, discussed with him the availability and sale of drugs, located the drugs for Osborne, arranged the transaction, drove to the meeting place, and took the $100

buy money from Osborne. As such, there was no manifest injustice and, hence, no palpable error.

### III. There was Sufficient Evidence for a Conviction of Complicity to Trafficking in a Controlled Substance in the First Degree.

██ At the close of the Commonwealth's case, Childers moved for a directed verdict based on insufficiency of the evidence and the court denied the motion. Childers did not present any evidence but did renew her motion for a directed verdict, which the court again denied. The jury found Childers guilty of complicity to trafficking in a controlled substance in the first degree. Childers's final argument on appeal is that there was insufficient evidence to support her conviction. We disagree.

██ On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, 816 S.W.2d 186, 187–88 (Ky.1991). In other words, the trial court must assume the Commonwealth's evidence is true, while leaving to the jury determinations as to the credibility and weight to be given such evidence. *Id.* A directed verdict should not be given if the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt the defendant is guilty. *Id.* There must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a "mere scintilla of evidence." *Id.* On appellate review, we determine whether, under the evidence as a whole, it was clearly unreasonable for the jury to have found the defendant guilty. *Fairrow v. Commonwealth*, 175 S.W.3d 601, 609 (Ky.2005) (cit-

ing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky.1983)).

Under the jury instructions, for the jury to find Childers guilty of complicity to trafficking in a controlled substance in the first degree, they had to believe beyond a reasonable doubt that Chad Johnson sold Oxycodone, a Schedule II controlled substance, to Osborne and that Childers "intentionally solicited, commanded, or engaged in a conspiracy with" Johnson for the purpose of trafficking in a controlled substance. *See also* Kentucky Revised Statutes (KRS) 502.020 and KRS 218A.1412(a).

Based on the record as a whole, it was not clearly unreasonable for the jury to find Childers guilty of complicity to trafficking in a controlled substance in the first degree. The jury could have found the elements of the charge sufficiently satisfied by the proof that Childers took both phone calls from Osborne; discussed with him the availability and sale of the drugs, including type, quantity and price; located the Oxycodone for Osborne; arranged the sale; drove herself and Johnson, who allegedly had the drugs, to the meeting place in order for the buy to occur; and took the $100 buy money from Osborne. Further, the forensic examination confirmed that the pills were Oxycodone, a Schedule II controlled substance. The evidence was sufficient to support the jury's verdict, and the trial court did not err in refusing to direct a verdict in favor of Childers.

### CONCLUSION

The trial court did not err in denying Childers's inquiry into the nature of Osborne's prior felony convictions while cross-examining Detective Wireman. Such evidence is not admissible under KRE 608(b), which permits impeachment only by specific acts that have not resulted

in a criminal conviction. Evidence relating to impeachment by criminal conviction is governed solely by KRE 609. Further, Childers's inquiry was improper under KRE 609, which requires a witness be questioned about his own prior conviction. The Commonwealth's Attorney's comments on the drug buy tape were permissible; and while it was error for the trial court to allow Detective Wireman to interpret the tape, this error did not rise to the level of palpable error under RCr 10.26. Finally, based on the evidence as a whole, it was not clearly unreasonable for the jury to have found Childers guilty of complicity to trafficking in a controlled substance in the first degree. As such, we affirm the April 14, 2009 Judgment of the Lawrence Circuit Court.

MINTON, C.J.; CUNNINGHAM, and NOBLE, JJ., concur. VENTERS, J., dissents by separate opinion in which SCHRODER and SCOTT, JJ., join.

VENTERS, J., dissenting.

We respectfully disagree with the Majority's conclusion that cross-examination of a witness under KRE 608(b) is restricted by KRE 609, and, therefore, we dissent. The Majority holds that KRE 608(b) forbids the cross-examination of a witness about a specific instance of dishonest conduct when that conduct resulted in a criminal conviction, but allows such cross-examination when the subject of the inquiry was *not* convicted of a crime arising from such conduct. We dissent from the majority's interpretation of KRE 608(b) because it is contrary to the plain meaning of the rule; offends the traditional guiding principles of our Rules of Evidence; and has been criticized by legal scholars, including one cited below stating that it leads to "a foolish result."

The majority accepts the notion, derived from federal cases, that "the interplay between Rules 608 and 609 is complex." The majority then echoes the complicated analysis of similar Federal Rules of Evidence used by some federal courts. However, there is no complex "interplay" between KRE 608(b) and KRE 609. KRE 608(b) and KRE 609 are not interdependent upon each other because each rule operates independently of the other.

The interpretation of the corresponding Federal Rules of Evidence by the federal courts and adopted by the majority opinion leads to the following absurd result. Under the majority's ruling, a witness who has committed a theft may be cross-examined under KRE 608(b) about the theft but only if he was not actually convicted of the crime. However, if he was convicted of the theft, the majority holds that he could not be cross-examined about it. Thus, the act of theft may be used to impeach a witness who was tried and found *not guilty* of the theft; but it cannot be used when the dishonest act has been established beyond a reasonable doubt. That result defies reason. If one accepts the premise, as the Rules of Evidence for both Kentucky and the federal courts universally do, that knowledge of a witness's dishonest conduct aids the trier-of-fact in assessing the credibility of that witness, then one must concede that conduct resulting in a conviction for theft, or some other of crime of dishonesty, such as perjury, has far more probative weight than an unproven allegation of the dishonest act.

The source of the majority's misconstruction of KRE 608(b) is its failure to recognize that the phrase, "other than conviction of crime as provided in rule 609," is applicable only to extrinsic evidence. To reveal the fallacy of the majority's opinion, we must dissect KRE 608(b).

KRE 608(b) consists of four sentences.[6] The first sentence reads:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence.

KRE 609(a)[7] generally provides that evidence of a witness's felony conviction "may be elicited from the witness" (*i.e.*, on cross-examination), or it may be *established by public record if denied by the witness.* The identity of the crime upon which the conviction is based may not be disclosed unless the witness either chooses to disclose the crime or denies the conviction. The majority reads KRE 608(b)'s reference to KRE 609 as a complete preemption by KRE 609 of any evidence relating to a criminal conviction. Stressing that evidence of criminal conviction is "governed by KRE 609," the Majority ignores the fact that the first sentence of KRE 608(b) addresses only *extrinsic evidence,* such as a public record of a criminal conviction, not testimony elicited upon cross-examination. The majority adopts the same flawed construction of the phrase, *"other than conviction of crime as provided in rule 609"* that has divided the federal courts.

By its plain meaning, the first sentence of KRE 608(b) generally prohibits an attack on a witness's credibility using *"extrinsic evidence"* of specific instances of the witness's conduct. In the context of this rule, extrinsic evidence means "all evidence other than what can be extracted during cross-examination of witnesses." *See* ROBERT G. LAWSON, *THE KENTUCKY EVIDENCE LAW HANDBOOK,* § 4.20(5) (4th ed.2003) (quoting Minutes, Evidence Rules Review Committee, Commentary on Amended Rule 608 (September 28, 2001)). Without an additional qualifying phrase, the first sentence of KRE 608(b) would directly conflict with KRE 609's express authorization of extrinsic evidence, in the form of public records, to prove that a witness has a felony conviction. Hence, the qualifying phrase, *"other than conviction of crime as provided in rule 609,"* simply operates to clarify that KRE 608(b)'s general ban on the use of extrinsic evidence to prove specific conduct of a witness does not interfere with the operation of KRE 609, where extrinsic evidence of a criminal conviction is admissible in certain circumstances. That qualifying phrase has nothing whatsoever to do with the second sentence of KRE 608(b) which, in turn, does not involve extrinsic evidence. It reads as follows:

> "They ["specific instances of witness conduct"] may, however, in the discre-

---

**6.** The third and fourth sentences of KRE 608(b) do not enter into the analysis under the view expressed in this dissenting opinion or in the majority opinion. The third sentence preserves the integrity of the proceeding by requiring the cross-examiner to have a factual basis to support the subject matter of the inquiry. The fourth sentence preserves the witness's right against self-incrimination when questioned under Rule 608(b).

**7.** KRE 609(a) states:
General rule. For the purpose of reflecting upon the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record if denied by the witness, but only if the crime was punishable by death or imprisonment for one (1) year or more under the law under which the witness was convicted. The identity of the crime upon which conviction was based may not be disclosed upon cross-examination unless the witness has denied the existence of the conviction. However, a witness against whom a conviction is admitted under this provision may choose to disclose the identity of the crime upon which the conviction is based.

tion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." [8]

The second sentence is the heart of KRE 608. It allows, subject to the trial court's discretion, a witness to be *cross-examined* about specific instances of conduct that are probative of his own character for truthfulness or untruthfulness, or about the character of another witness about whom he has testified. Where the first sentence of KRE 608(b) deals only with extrinsic evidence and excludes from its reach extrinsic evidence used to prove a criminal conviction under KRE 609, the second sentence of KRE 608(b) deals only with cross-examination. The second sentence requires no qualifying reference to KRE 609 because it contains no inherent conflict with KRE 609. KRE 608(b) allows cross-examination of a witness about specific acts that are probative of truthfulness or untruthfulness; and KRE 609 allows cross-examination, and in some circumstances, extrinsic evidence about felony convictions. The language of neither rule precludes application of the other.

The majority, again citing the reasoning of various federal cases, supposes that its interpretation of KRE 608(b) is needed to block an "end run" around KRE 609 with "facts and details" underlying the convic-

tion. In response, we note again that inquiry allowed by KRE 608(b) is extremely limited in scope and may be done only upon cross-examination. No follow-up admission of extrinsic evidence is allowed. Thus, we respectfully suggest that the Majority overstates the concern over admission of extensive details of a witness's conduct.

The majority worries further that we not permit KRE 608(b) to become the "backdoor" for admitting evidence not allowed under KRE 609, and so it constructs an interpretation of the rule to prevent that. It is true that sometimes cross-examination under KRE 608(b) about specific acts underlying a criminal conviction will reveal the identity of a crime which would not otherwise be allowed under KRE 609. But that "problem" is not unique to the KRE 608–609 analysis. Evidence forbidden under the hearsay rule may often find another route to the factfinder, as impeachment evidence or some other non-hearsay purpose. We even have a rule of evidence that addresses the problem, KRE 105.[9] The "backdoor" admission feared by the majority is further limited because only specific acts relating to the character trait of truthfulness can be admitted under KRE 608(b) and, even then, only after passing the filter of a trial judge's discretion. The specific act underlying many felony convictions will never be admitted under KRE 608(b) because they do not reflect upon the trustworthiness of the witness. Felony convictions for crimes such as rape, manslaughter, murder, as-

---

**8.** The inquiry under review in the instant case pertained only to the second aspect of 608(b), cross-examination of a witness (Detective Wireman) about specific conduct of another witness (Osborne, the confidential informant).

**9.** KRE 105(a) states: "When evidence which is admissible as to one (1) party or for one (1) purpose but not admissible as to another par-

ty or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly. In the absence of such a request, the admission of the evidence by the trial judge without limitation shall not be a ground for complaint on appeal, except under the palpable error rule."

sault, sexual abuse, trafficking in controlled substances, arson, nonsupport, and many others often do not involve specific conduct that would qualify under KRE 608(b). Thus, the policy choice implicit in KRE 609, to prohibit the identification of the particular crime is impeded only when the felony conviction involves a crime of dishonesty, such as theft, perjury, or the like. The majority, however, ignores the fact that KRE 608(b) represents an equally valid, but different, policy choice: a jury assessing the credibility of a witness may be apprised of conduct of that witness that is indicative of a truthful or untruthful disposition.

Because it perceives the greater injustice to follow the disclosure of specific conduct from which a felony conviction arose, the majority sees KRE 609 as superseding KRE 608 *in all situations*. Accordingly, the majority creates a bright line, one-size-fits-all rule that offends a traditional guiding principle of our Rules of Evidence—the role of the trial judge in balancing the fairness of evidence admitted at trial.

Certainly, as the majority fears, circumstances exist when the coupling of an unidentified felony conviction with the acknowledgement under cross-examination of the specific conduct from which the conviction arose, creates an unfairly prejudicial bias for or against a party. In such instances, KRE 608(b) expressly requires the trial judge to exercise discretion and disallow the prejudicial cross-examination. There is no omnipresent, unfair bias that requires us to ban inquiry through cross-examination about specific acts under

KRE 608(b) every time those acts resulted in a conviction admissible under KRE 609. Such a bright line rule totally ignores, not only the judicial discretion expressly granted under KRE 608(b), but also the general policy implicit in KRE 403 [10] to allow the trial court wide latitude to exclude relevant evidence when its prejudicial impact exceeds its probative value.

In *Woolum v. Hillman*, 329 S.W.3d 283, 287 (Ky.2010), we found such a bright line rule on impeachment of a witness to be incompatible with KRE 403.[11] Citing *Baker v. Kammerer*, 187 S.W.3d 292, 296 (Ky. 2006), we described the "the general inclusionary thrust of the Rules of Evidence and the preference to allow evidence of bias," as "core principles of Kentucky's evidence law." "The law favors the admission of evidence that is relevant to a jury's determination of a witness's credibility. As with most evidentiary decisions, the trial court's discretion in this area stems from its gatekeeping function under KRE 403." *Baker*, 187 S.W.3d at 295. "A trial judge may always exclude evidence when its probative value is substantially outweighed by its risk of undue prejudice." *Id.* at 297. The majority's interpretation of KRE 608(b) leads us down a path that departs from the foregoing principles.

Finally, we note that while both of the articles of legal scholarship cited in the majority opinion acknowledge that most federal circuit courts (but not all) have adopted an interpretation of the rules consistent with the majority opinion, both articles strongly criticize the interpretation.

---

**10.** KRE 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

**11.** *Woolum* involved the impeachment of an expert medical witness because of a potential bias arising from the fact that he had the same medical malpractice insurance as the party for whom he was testifying.

Noted criminal law professor H. Richard Uviller states:

> This reading of the rules [the same reading of rules adopted by the majority] obviously produces a foolish result. No good reason supports allowing extensive inquiry into an elaborate real estate hoax and the witness's part in it as long as it was never prosecuted as a crime, but limiting examination of the prosecuted swindle to the fact of conviction of mail fraud or some lesser, bargained-for crime to which the defendant may have been allowed to plead guilty.

H. Richard Uviller, *Credence, Character, and the Rules of Evidence: Seeing Through the Liar's Tale*, 42 Duke L.J. 776, 804 (1993). Uviller goes on to note:

> A wiser construction would be that Rule 608(b) is unaffected by Rule 609, and that the fact that the witness's dishonest conduct resulted in a criminal conviction does not diminish the right of the opposing party to cross-examine the witness about the conduct itself. In this reading, Rule 608(b) is taken as a provision concerned only with the admissibility of extrinsic evidence; it provides that proof of specific instances of dishonest conduct may be adduced only from the mouth of the impeached witness himself.
>
> In this context, the troublesome words of Rule 608(b), "other than conviction of crime as provided in rule 609," would not be read to limit the license to conduct that does not underlie a criminal conviction, but rather to exempt proof of the fact of prior conviction from the ban on extrinsic evidence. This reading also accords with the Advisory Committee Note.

*Id.* at 806 (footnotes omitted). The "wiser construction" that Professor Uviller suggests is precisely the same interpretation of the rules that we outlined above.

The second article cited by the majority agrees with Professor Uviller's assessment, although its author, New York Law School Professor Donald Ziegler, shares the majority's concern for the prejudicial effect of 608(b) impeachment. After describing what he calls "chaos" among the federal courts trying to resolve the interaction between Rule 608(b) and Rule 609(a) and proposing substantial amendments to the Rules, he writes:

> [C]ourts generally should permit impeachment with the same sort of misconduct under both rules. The reason is the one stressed above; namely, that it is the misconduct that is probative and prejudicial, not whether the misconduct resulted in a conviction. Complete consistency plainly is not possible. The scope of misconduct admissible under Rule 608(b) necessarily exceeds that of Rule 609(a) because Rule 609(a) is limited to misconduct that resulted in a criminal conviction. Rule 608(b) encompasses not only conduct resulting in a criminal conviction but also criminal conduct not resulting in a conviction and some noncriminal conduct that bears on credibility. Nonetheless, there is substantial overlap. Prior misconduct that is criminal in nature should be equally admissible under both rules.

Donald H. Ziegler, *Harmonizing Rules 609 and 608(b) of the Federal Rules of Evidence*, 2003 Utah L.Rev. 635 (2003) (footnote omitted). The majority finds unjustifiable comfort in the fact that its opinion mimics the result attained by a majority of federal courts interpreting analogous provisions of the Federal Rules of Evidence. However, the Kentucky Rules of Evidence are the product of the Kentucky Supreme Court and the Kentucky General Assembly, aided by eminent Kentucky lawyers and legal scholars. In the interpretation of state law, we owe no deference to the views the federal judges of various

circuits throughout the nation simply because they outnumber the federal judges in other circuits who hold a different view.[12] We should not subject the meaning of the Kentucky Rules of Evidence to a head count of federal judges interpreting their own rules of evidence, especially when doing so produces the illogical effects of the majority opinion in this case and, when doing so, defies the plain language of our Rule and contravenes core principles of Kentucky evidentiary law. We, therefore, respectfully dissent.

SCHRODER and SCOTT, JJ., join.

---

12. The majority notes that its opinion aligns Kentucky law with most Federal Circuit Courts, citing cases from the 2nd, 5th, 7th, 8th, 9th, and 10th, and the DC Circuits. However, we note that a recent decision of the 7th Circuit suggests that it is no longer a member of that majority. *See U.S. v. Barnhart*, 599 F.3d 737, 747 (7th Cir.2010) (holding defendant was properly cross-examined under Rule 608(b) regarding the facts underlying his theft and deceptive-practices convictions because he was a witness and the convictions related to his character for truthfulness.) Federal courts of the 1st Circuit (*United States v. Wilkerson*, 251 F.3d 273 (1st Cir.2001)), 3rd Circuit (*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir.2000)), and 6th Circuit (*United States v. Hurst*, 951 F.2d 1490, 1501 (6th Cir.1991)) reach a conclusion that accords with our dissenting opinion.