NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0180n.06

No. 12-6015

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STEPHANIE DENISE OLSON, | ) | |
| | ) | |
| Petitioner -Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| JEFF LITTLE, Warden, | ) | |
| | ) | |
| Respondent -Appellee. | ) | |

FILED
Mar 09, 2015
DEBORAH S. HUNT, Clerk

Before: BOGGS, NORRIS, and WHITE, Circuit Judges.

BOGGS, Circuit Judge. Stephanie Olson appeals the district court's denial of her petition for a writ of habeas corpus. A Kentucky jury convicted Olson of complicity to murder. Olson presents four grounds for habeas relief on appeal: (1) the state trial court denied her right to confront a key witness when it refused to allow into evidence the witness's prior misdemeanor conviction for falsely reporting an incident; (2) the state engaged in improper prosecution tactics when it knowingly introduced false testimony in order to permit it to introduce otherwise inadmissible hearsay in rebuttal; (3) the state's opening statement alluded to highly damaging testimony that was never introduced; and (4) the trial court's admission of inadmissible hearsay violated her right to a fundamentally fair trial. The district court denied Olson's petition. For the reasons below, we affirm the district court's judgment.

1

I

On June 5, 2002, Dianne Snellen was murdered at her home in Georgetown, Kentucky. The state charged Olson, Snellen's daughter, with complicity to the murder. The state's theory was that Olson solicited her then-boyfriend, David Dressman, to murder her mother and that Dressman and his acquaintance Timothy Crabtree murdered Snellen.

In the months prior to Snellen's murder, Olson and Snellen had a fractious relationship involving both verbal and physical fights and at least one attempt by Olson to run away from home. One apparent source of friction between mother and daughter was Olson's relationship with Dressman.

On June 5, Olson left a note at her mother's home indicating that Olson was going to see an individual named Beth. Olson, in reality, went to see Dressman at an apartment where he was living with a friend. On the morning of June 6, Snellen was found stabbed to death at her home.

At trial, one of the state's key witnesses was Richard Roberts, a 2002 cellmate of Crabtree's while Crabtree was in custody on an unrelated matter. Roberts testified that Crabtree admitted that he and Dressman went to Snellen's home at night and stabbed her numerous times. Roberts also testified that Crabtree was concerned that Dressman would reveal Crabtree's role in the murder and that Crabtree solicited Roberts to kill Dressman when Roberts was released from detention.

The jury convicted Olson of complicity to murder. On direct appeal to the Kentucky Supreme Court, Olson raised twelve issues. The Kentucky Supreme Court affirmed Olson's conviction. *See Olson v. Commonwealth*, No. 2005-SC-000592-MR, 2008 WL 746651 (Ky. Aug. 21, 2008).

Olson petitioned the federal district court for a writ of habeas corpus, seeking relief on several grounds, including that: (1) the state trial court denied her right to confront Roberts when it refused to allow into evidence his prior misdemeanor conviction for falsely reporting an incident; (2) the prosecution engaged in improper tactics to enter Roberts's testimony, thereby depriving her of the right to a fair trial and due process; (3) the state's opening statement alluded to highly damaging testimony that was never introduced; and (4) the trial court's admission of inadmissible hearsay violated her right to a fundamentally fair trial. *See Olson v. Little*, No. 5:09-cv-361-KSF, 2012 WL 2970487, at *1 (E.D. Ky. July 20, 2012). The district court denied the petition.

## II

A federal court may not grant a petition for a writ of habeas corpus for "any claim that was adjudicated on the merits in State court proceedings" unless the state proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "unreasonable application" clause authorizes federal courts to grant the writ when a "state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). The state-court application of federal law must be "objectively unreasonable." *Ibid.*

On habeas review, we examine a district court's legal conclusions de novo. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc).

3

### III. Roberts's Prior Conviction

#### A. Background

Olson contends that the state trial court committed constitutional error when it excluded evidence of a state witness's prior misdemeanor conviction for falsely reporting an incident. At trial, one of the state's key witnesses was Richard Roberts, a 2002 cellmate of Crabtree's while Crabtree was in custody on an unrelated matter. Roberts testified that Crabtree admitted to him that Crabtree and Dressman went to Snellen's home at night and stabbed her numerous times. Roberts also testified that Crabtree was concerned that Dressman would reveal Crabtree's role in the murder and that Crabtree solicited Roberts to kill Dressman when Roberts was released from detention. On cross-examination, Olson sought to impeach Roberts with a prior misdemeanor conviction for falsely reporting an incident to the police. Olson argued that the evidence was probative both as to bias and untruthfulness. The trial court excluded the evidence because it was inadmissible under Kentucky evidentiary rules. Olson argues that this violated her Confrontation Clause right to impeach a key witness.

On direct appeal, the Kentucky Supreme Court held that the trial court properly excluded the evidence under state evidentiary laws. *See Olson*, 2008 WL 746651, at \*8–9. Under Kentucky law, a trial court must allow a party to impeach a witness with evidence that the witness has been convicted of a *felony*—but not a misdemeanor. Ky. R. Evid. 609(a); *see Olson*, 2008 WL 746651, at \*9. The trial court may, in its discretion, allow a party to impeach by inquiring into specific instances of conduct—but not criminal convictions. Ky. R. Evid. 608(b); *see Olson*, 2008 WL 746651, at \*9. The state supreme court determined that the trial court did not abuse its discretion in excluding the misdemeanor criminal conviction. *Olson*, 2008 WL 746651, at \*9.

The Kentucky Supreme Court did not directly address Olson's Confrontation Clause argument, and so the parties dispute whether we should apply § 2254's deferential standard of review. Here, the matter is potentially important "[b]ecause the requirements of § 2254(d) are difficult to meet." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). The Supreme Court recently addressed the issue that "arises when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question." *Ibid.* The Court held that federal courts must presume, subject to rebuttal, that the federal claim was adjudicated on the merits by the state court. *Ibid.*

## B. Applicable Law

A criminal defendant "enjoy[s] the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right extends to state proceedings. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The right to confront "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Indeed, "'a primary interest secured by'" the Confrontation Clause "'is the right of cross-examination.'" *Ibid.* (quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). The Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17.[1] Thus, a defendant can

---

[1] There are, essentially, two lines of Confrontation Clause cases. The first concerns the admission of out-of-court statements offered to prove the truth of the matter asserted. *See Williams v. Illinois*, 132 S. Ct. 2221 (2012); *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011); *Michigan v. Bryant*, 131 S. Ct. 1143 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Giles v. California*, 554 U.S. 353 (2008); *Indiana v. Edwards*, 554 U.S. 164 (2008); *Davis v. Washington*, 547 U.S. 813 (2006); *Crawford v. Washington*, 541 U.S. 36 (2004). The second concerns trial-court restrictions on the scope of cross-examination—at issue here.

5

establish a Confrontation Clause violation by "showing that [s]he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

But a defendant's right to cross-examine is not unfettered. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). States may "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

In this case, the limit imposed was Kentucky Rule of Evidence 609, which obligates the trial court to admit evidence only of prior *felony* convictions. Counsel may not, however, generally cross-examine about the specific kind of felony involved. Ky. R. Evid. 609(a). Olson observes that Federal Rule 609(a), in contrast to its Kentucky counterpart, requires a court to admit evidence of a witness's prior conviction (whether a felony or a misdemeanor) "if the court can readily determine that establishing the elements of the crime required proving . . . a dishonest act or false statement." Fed. R. Evid. 609(a)(2). There is little doubt that Roberts's conviction falls within the federal 609(a)(2) category. The question, however, is whether it is an unreasonable application of clearly established federal law as determined by the Supreme Court to conclude that it is not unconstitutional for a state's evidentiary rules to fail to track the federal rule and thus to disallow the admission of *crimen falsi* evidence.[2]

---

[2] We use the term *crimen falsi* to refer to the category of crimes for which convictions must be admitted under Federal Rule of Evidence 609(a)(2). *See* Stuart P. Green, *Deceit and the Classification of Crimes: Federal Rule of Evidence 609(a)(2) and the Origins of Crimen Falsi*,

## 1. There is No Uniform Approach to Prior-Conviction Evidence

There are four general approaches to the admission of evidence of a prior conviction for impeachment purposes. The traditional rule is that counsel may cross-examine about felonies and *crimen falsi*. *See, e.g.*, Fed. R. Evid. 609(a). A discretionary approach allows counsel to cross-examine about prior convictions only if the probative value outweighs the prejudice. *See, e.g.*, Ill. Evid. R. 609(a). A third approach allows for cross-examination *only* about *crimen falsi*. *See, e.g.*, Alaska R. Evid. 609(a); Haw. R. Evid. 609(a); Kan. Stat. Ann. § 60-421. A fourth approach permits no cross-examination at all about prior convictions. *See, e.g.*, Mont. R. Evid. 609. Kentucky's rule is unusual in that it allows cross-examination about prior felonies but does not expressly permit *crimen falsi* evidence.

The current federal approach—allowing courts to admit prior felony convictions, subject to a balancing test, and requiring courts to admit convictions for *crimen falsi*—has not always been the law. Congress has waffled significantly over the years about whether courts should or must admit *crimen falsi* convictions. An early Congressional approach, reflected in the District of Columbia Code, followed the discretionary method, allowing courts, in their discretion, to admit all prior convictions. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 513 (1989) (citing 14 D.C. Code Ann. § 14-305 (1961)). The Advisory Committee's initial March 1969 draft of Rule 609 was similar to the current rule: it required courts to admit prior felonies and *crimen falsi*. *See id.* at 515. In a later draft, in March 1971, the Advisory Committee reversed course and recommended the discretionary approach. *See id.* at 515–16. In 1972, at Senator

---

90 J. Crim. L. & Criminology 1087, 1090 (2000) ("To the modern American lawyer, crimen falsi is familiar . . . as a category of offenses recognized by Rule 609(a)(2) . . . ."). The Advisory Committee refers to *crimen falsi* offenses as those "which involve[] some element of deceit, untruthfulness, or falsification bearing on the [witness's] propensity to testify truthfully." Fed. R. Evid. 609(a)(2) advisory committee's note.

McClellan's urging, the Advisory Committee reversed course again and submitted a proposed rule identical to the 1969 version. *See id.* at 516–17. A subcommittee of the House of Representatives Judiciary Committee amended the bill to require courts to admit *crimen falsi* evidence but to exercise discretion in admitting felonies. *See id.* at 517. The full Judiciary Committee altered the bill to allow for cross-examination only about *crimen falsi*. *See id.* at 517–18. The Senate Judiciary Committee, for its part, would have tolerated impeachment by *crimen falsi* evidence only for criminal defendants. As to other witnesses, the committee would have allowed courts to admit evidence of felonies in their discretion. *See id.* at 519. The full Senate, at Senator McClellan's urging, returned to the Advisory Committee's original 1969 proposal. *See ibid.* Congress eventually enacted a rule requiring courts to admit both prior felonies, after balancing probativeness and prejudice, and also *crimen falsi* evidence.[3] *See id.* at 520.

On one hand, the legislative history—though not indicative of the meaning of the present rule—illustrates the difficulty in determining what kinds of prior convictions a court should or must admit. On the other hand, it may be significant that every proposed version of Rule 609 either allowed or required courts to admit *crimen falsi* evidence. *See* Stuart P. Green, *Deceit and the Classification of Crimes: Federal Rule of Evidence 609(a)(2) and the Origins of Crimen Falsi*, 90 J. Crim. L. & Criminology 1087, 1114 (2000) ("[W]hile there was extensive debate in

---

[3] The current version of Rule 609 contains two different balancing tests that courts must employ to determine whether to admit prior felony convictions. If the witness is not a criminal defendant, the court must admit the evidence subject to Rule 403's familiar balancing test, under which the court considers whether "probative value is *substantially* outweighed" by prejudice. Fed. R. Evid. 403 (emphasis added). If the witness is the defendant in a criminal case, however, the court must admit the evidence if the probative value outweighs the prejudicial impact. *See* Fed. R. Evid. 609(a)(1)(B). Thus, if the witness is a defendant, a prior felony conviction that is 51% prejudicial and 49% probative may not be admitted. If the same conviction were at issue for a non-criminal-defendant witness, however, the evidence could be admitted.

Congress over the precise shape of Rule 609, there appears to have been virtually no discussion of the underlying premise that a person who has been convicted of either a crime of deceit or some other serious crime is unworthy of belief.") (footnote omitted).

2. Kentucky Rules of Evidence 608 and 609

Kentucky's evidentiary rules are unusual in that they do not provide a specific avenue for courts to admit a witness's prior *crimen falsi* convictions. The Kentucky Supreme Court recently noted that its rules create an "inability to inquire in any way about misdemeanor convictions reflecting on dishonesty"—what the court called a "substantial hole in the present [evidentiary] regime." *Allen v. Commonwealth*, 395 S.W.3d 451, 463 (Ky. 2013). In *Allen*, the defendant sought to impeach a key witness with prior felony and misdemeanor convictions for crimes involving dishonesty. *See id.* at 461. On appeal, Allen argued that denying the right to cross-examine about those crimes violated her constitutional due-process right to present a defense. *See ibid.*

In its opinion in *Allen*, the Kentucky Supreme Court discussed two separate aspects of Kentucky Rules of Evidence ("KRE") 608 and 609: whether the rules allow only for inquiring about prior conduct or whether they allow extrinsic evidence to be introduced and also whether Rule 608 permits inquiring about conduct that resulted in a criminal conviction. First, the court explained that before 2003, Kentucky permitted counsel to attack the credibility of a witness only by introducing evidence about the witness's general reputation for truthfulness or untruthfulness in the community. *See id.* at 462. In 2003, Kentucky revised its Rule 608 to track the federal version, allowing counsel to *inquire* about specific acts of bad conduct, other than convictions of crime. *See ibid.* The Kentucky Supreme Court explained that KRE 608, however, "does not allow proof of specific instances of conduct by extrinsic evidence." *Ibid.* Rather, the court explained, "counsel is limited to asking the witness about the specific instance

9

of conduct on cross-examination and is stuck with whatever answer is given." *Ibid.* This does not answer, however, what *kind* of conduct counsel may inquire into.

In *Allen*, the Kentucky Supreme Court also addressed a second feature of the Rules—whether Rule 608 permits inquiry into conduct that resulted in a criminal conviction. In 2010, in *Childers v. Commonwealth*, 332 S.W.3d 64 (Ky. 2010)—a case now abrogated by *Allen*—the Kentucky Supreme Court took the view that Rule 608 "permits impeachment *only* by specific instances of conduct *that have not resulted in a conviction* while evidence relating to impeachment by criminal conviction is governed *solely* by KRE 609." *Childers*, 332 S.W.3d at 69 (emphases added). Under the *Childers* approach, if the prior bad conduct "in question result[ed] in a criminal conviction, [it was] admissible for character purposes only when KRE 609 allow[ed] it." *Allen*, 395 S.W.3d at 463. This raises the question of what KRE 609 allows.

KRE 609 allows a witness to be impeached by the fact that he has been convicted of a felony. The *Allen* court explained that "[u]nlike the federal rule, KRE 609 does not allow proof that the witness was convicted of a non-felony (usually a misdemeanor) involving dishonesty or reflecting on character for dishonesty." *Ibid.* Kentucky's Rule 609 makes it a "mere-fact" state, where "a witness may be impeached with the 'mere fact' of a prior felony conviction, without the felony being identified, without mention of the witness's sentence, and without any evidence of the conduct that gave rise to the conviction." *Id.* at 471 (Minton, C.J., concurring in result only). This is a "substantial departure" from the equivalent federal rule, and KRE 609 "appears to be the only one in the country that expressly disallows any identification of the underlying crime." *Id.* at 472. Thus, even if a witness had been convicted of a *felony* involving dishonesty, only the "mere fact" that a felony conviction existed would be admissible.

Under the *Childers* approach, the Kentucky rules gave rise to "the absurd result that misdemeanor-level dishonest conduct is admissible under KRE 608(b) if a person were simply lucky enough not to have been convicted . . . but that a person who has actually been convicted of a misdemeanor involving a crime of dishonesty could avoid impeachment." *Id.* at 463 (majority opinion). In *Allen*, the Kentucky Supreme Court determined that it was "simply unfair" that its rules categorically excluded evidence of criminal dishonesty that resulted in a conviction. *Ibid.* The court observed that its current rules did "not offer a complete system for addressing dishonest conduct and what it says about a witness's character for truthfulness." *Id.* at 465. The Kentucky Supreme Court, therefore, reversed course and held that KRE 608 allowed inquiry into all prior bad conduct, even if the conduct resulted in a conviction. *Id.* at 463. Reasoning that "the Kentucky rules have a hole in them," the court reinterpreted its rules to allow counsel, under KRE 608(b), to inquire on cross-examination into dishonest conduct that led to the conviction—but not to introduce evidence of the conviction itself. *See id.* at 465–66.

Two Justices concurred in the result only, agreeing that the defendant should have been allowed to cross-examine about the witness's prior dishonest conduct but disagreeing that the Kentucky Rules of Evidence could be construed to permit this result. *See id.* at 471–76 (Minton, C.J.). Chief Justice Minton argued that "the failure of . . . KRE 609 . . . to make any distinction between crimes of dishonesty and other crimes . . . can have the ironic effect of significantly hampering the very defendant the rule's strict simplicity was designed to protect." *Id.* at 474. Chief Justice Minton, joined by Justice Abramson, would have held that the defendant's federal constitutional due-process rights abrogated the state evidentiary rules and required admitting the *crimen falsi* evidence. *See id.* at 475–76.

11

### 3. Purposes Served by KRE 608 and 609

In drafting rules that limit cross-examination, Kentucky has multiple interests to consider. In a related context, we have noted that such interests may include:

> the prevention of minitrials on collateral issues . . . ; the probative or material value of the evidence toward the issues at trial; the prejudicial or inflammatory nature of the evidence sought to be introduced . . . ; [and] whether the trial court offered a cautionary instruction and/or limited the scope of cross-examination, as well as the extent to which the defendant was able to cross-examine the witness.

*Jordan v. Warden*, 675 F.3d 586, 595 (6th Cir. 2012) (internal citations omitted).

The Kentucky Supreme Court has itself identified similar purposes underlying the evidentiary rules at issue. The current version of KRE 608 was drafted "to track the federal version of the rule." *Allen*, 395 S.W.3d at 462. Kentucky has an interest in "avoid[ing] what amounts to a mini-trial within the trial about whether the person actually committed the dishonest act." *Id.* at 465. The rules thus serve to "avoid over-collateralizing trials," *ibid.*, and afford the trial court discretion to "handl[e] . . . evidence in a fair and truthful manner." *Id.* at 466.

Additionally, Kentucky has an interest in drafting, interpreting, and amending its own evidentiary rules as it sees fit. *Cf. Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) ("[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."). The Kentucky rules, though perhaps not without their flaws, were "deliberately chosen." *Allen*, 395 S.W.3d at 471 (Minton, C.J., concurring in result only). Affording a state autonomy over its own evidentiary rules "allow[s] for the airing of complexities and divergent points of view." *Ibid.* We are loath to instruct a state about which rules of evidence are optimal, unless the Constitution so requires. A state rule's mere nonconformity with its federal analogue should not be per se troublesome. Both "the contentious

12

history of the federal rules" and "the wide diversity of state approaches" underscore this point. *Id.* at 474; *see also United States v. Lopez,* 514 U.S. 549, 581 (1995) ("[T]he States may perform their role as laboratories for experimentation to devise various solutions where the best solution is far from clear.").

### 4. Olson's Interests in Admitting Roberts's Prior Conviction

Olson argues that her interests in cross-examining Roberts about his prior conviction are twofold: first, that the evidence would demonstrate to the jury that Roberts had a motive to testify consistently with his prior statement or risk another conviction for false reporting; second, that the evidence reveals Roberts's untruthful character.

Under Olson's first theory, Roberts, a cellmate of Crabtree's, knew that Crabtree was a suspect in Snellen's murder. In order to curry favor with law enforcement and thereby increase his chances of receiving shock probation, Roberts provided the police with a statement in which he implicated Crabtree. Roberts did not receive the shock probation, but Olson contends that he persisted in his story at trial for fear of prosecution for falsely reporting an incident and returning to prison. Olson maintains that her inability to offer this theory was all the more troubling because the prosecution, in its closing, emphasized that Roberts stayed true to his story even after not receiving probation. The prosecutor argued: "Did [Roberts] change his story[?] [N]o, it stayed the same. If he thought he was going to get a deal, he learned he didn't get a deal, and he still stayed true to the story." Olson argues that she, therefore, should have been allowed to argue that Roberts stuck with his story because "he knew from hard personal experience that were he to testify that his prior statement was a fabrication, he would be returned to custody and face up to a year in jail." Appellant Br. 24.

13

The district court suggested that admitting Roberts's prior conviction for falsely reporting an incident would not necessarily expose a motive to lie but could have shown that he was more likely to be *truthful*. The district court supposed that "having already been convicted of false reporting, [Roberts] would be less likely to give another false statement to the police within such a short time frame." *Olson*, 2012 WL 2970487, at *11. We think this goes too far. If the district court's theory were true, every felon would introduce his own prior convictions in order to show that, having already been convicted of a crime once, he has learned his lesson and is unlikely to commit the same act again. But we agree that Olson's theory that Roberts stuck with a false story out of fear of re-prosecution for falsely reporting an incident is not airtight: the risk of a subsequent false-reporting conviction, if Roberts recanted, was balanced by the risk of conviction for perjury if Roberts stuck with a false story.

Olson's second theory is that Roberts's prior misdemeanor conviction evinces his general character for untruthfulness. This is the theory under which the Federal Rules of Evidence expressly require courts to admit *crimen falsi* convictions. *See* Fed. R. Evid. 609 advisory committee's note.

It is far from clear, however, whether there is a constitutional right to impeach with evidence of a *crimen falsi* conviction. We have recognized a distinction between cross-examination as to bias, motive, or prejudice and cross-examination as to general credibility, and we have held that the first category is constitutionally protected whereas the second category is not. *Boggs v. Collins*, 226 F.3d 728, 737–38 (6th Cir. 2000). We noted that the Supreme Court in *Davis v. Alaska* distinguished between a "general attack on the credibility of the witness"—in which the cross-examiner "intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his

14

testimony"—and a "more particular attack on the witness' credibility . . . directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis*, 415 U.S. at 316; *see Boggs*, 226 F.3d at 736.[4] Although the *Davis* Court did not expressly exclude general credibility cross-examination from constitutional protection, it held only that cross-examination as to bias is protected. *Davis*, 415 U.S. at 316–17. Justice Stewart "emphasize[d] that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past . . . criminal convictions." *Id.* at 321 (Stewart, J., concurring). Thus, the Supreme Court has not clearly established that the Confrontation Clause guarantees a right to cross-examine a witness with a *crimen falsi* conviction.

## 5. Analysis of the Rules

Because this case is not before us on direct review from the Kentucky Supreme Court, we do not decide in the first instance whether the Kentucky rules run afoul of the Confrontation Clause. Rather, even though the Kentucky Supreme Court "reject[ed] [Olson's] federal claim without expressly addressing that claim," a "federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson*, 133 S. Ct. at 1096. That is, we presume that the

---

[4] While we have "cast considerable doubt" on the continued vitality of our distinction in *Boggs* between cross-examination as to bias and general credibility, *see Hargrave v. McKee*, 248 F. App'x 718, 727 (6th Cir. 2007), *Boggs* remains the law of this circuit. Moreover, *Boggs* did not break new ground so much as simply recognize a distinction explicit in *Davis* itself. *See Boggs*, 226 F.3d at 736–37. In *Hargrave*, the panel concluded that the defendant had a constitutional right to cross-examine a witness not about credibility but about *competency*—about "mental limitations affecting her ability accurately to perceive and recall the events at issue." *Hargrave*, 258 F. App'x at 727. Even there, however, the panel recognized that the case would be different if the cross-examiner simply sought to show that the witness "might be a person who was more willing to lie under oath than the average person." *Ibid.* Absent clearly established Supreme Court law to the contrary, we continue to adhere to *Boggs*. *See Jordan*, 675 F.3d at 596–97 (recognizing the *Boggs* distinction), *cited approvingly by Jackson*, 133 S. Ct. at 1994.

Kentucky Supreme Court concluded that its rules did not deprive Olson of her confrontation rights. Our only concern is whether *that* conclusion is contrary to or an unreasonable application of clearly established federal law. *See* § 2254(d). We conclude that it is not.

On direct review, the Kentucky Supreme Court found that Roberts's prior misdemeanor conviction was properly excluded because KRE 608 and 609—as interpreted at the time of Olson's conviction—prohibited the admission of both a witness's prior misdemeanor convictions as well as specific instances of conduct that resulted in a conviction. *See Olson*, 2008 WL 746651, at *9. The district court noted that the Kentucky Supreme Court confirmed the principle underlying this holding in its decision in *Childers*, 332 S.W.3d at 71–72. But, as discussed above, *Childers* has since been abrogated by *Allen*, in which the court reinterpreted KRE 608 and 609. Were Olson tried in Kentucky today, it appears that a trial court, in its discretion, could allow Olson to ask Roberts whether he had ever falsely reported an incident—but could not allow Olson either to ask whether Roberts had ever been *convicted* of falsely reporting an incident or to introduce the conviction itself. And were Olson tried in federal court, the trial judge would be required to admit Roberts's prior conviction under Federal Rule of Evidence 609(a)(2).

We are not concerned with the logic or correct application of Kentucky's own rules of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). And because this case is not before us on direct review from the Kentucky Supreme Court, neither are we concerned with whether the Constitution requires states to admit evidence of *crimen falsi*

16

convictions.[5]  Our concern, rather, is whether the state court's presumptive conclusion that state

rules may constitutionally disallow the admission of *crimen falsi* evidence is contrary to or an

---

[5] That is a substantially different question.  Although we have not found a case or scholarly article that addresses the issue, research indicates that Kentucky is not the only state with rules of evidence that would exclude *crimen falsi* convictions.

Twenty-one states and the District of Columbia expressly require trial courts to admit convictions of crimes involving dishonesty in order to impeach the credibility of a witness.  *See* Ala. R. Evid. 609(a)(2); Ariz. R. Evid. 609(a)(2); Ark. R. Evid. 609(a)(2); Del. R. Evid. 609(a)(2); D.C. Code § 14-305(b)(1)(B); Ga. Code. Ann. § 24-6-609(a)(2); Ind. R. Evid. 609(a)(2); Iowa Ct. R. 5.609(a)(2); Minn. R. Evid. 609(a)(2); Miss. R. Evid. 609(a)(2); Neb. Rev. Stat. § 27-609(1)(b); N.H. R. Evid. 609(a)(2); N.M. R. Evid. 11-609(A)(2); N.D. R. Evid. 609(a)(2); Okla. Stat. tit. 12, § 2609(A)(2); Or. Rev. Stat. § 40.355(1)(b); Pa. R. Evid. 609(a); S.C. R. Evid. 609(a)(2); Utah R. Evid. 609(a)(2); Wash. R. Evid. 609(a); W. Va. R. Evid. 609(a)(2)(B); Wyo. R. Evid. 609(a)(2).

Twelve states expressly allow trial courts to admit such convictions.  *See* Alaska R. Evid. 609(a) (subject to balancing); Fla. Stat. § 90.610(1); Haw. Rev. Stat. § 626-1, R. 609(a); Ill. Evid. R. 609(a) (subject to balancing); Kan. Stat. Ann. § 60-421; Md. R. 5-609 (making admissible convictions "relevant to the witness's credibility," subject to balancing); Me. R. Evid. 609(a)(2) (subject to balancing); Mich. R. Evid. 609(a)(1); Ohio Evid. R. 609(A)(3) (subject to balancing); S.D. Codified Laws § 19-14-12 (subject to balancing); Tenn. R. Evid. 609(a)(2); Vt. R. Evid. 609(a)(1) (subject to balancing).

Another eight states do not expressly address crimes involving dishonesty but have a rule broad enough to permit the introduction of *crimen falsi* convictions.  *See* La. Code Evid. Ann. art. 609.1(A) ("In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions . . . ."); Mass. R. Evid. 609(a) (making admissible any conviction, subject to limitations); Mo. Rev. Stat. § 491.050 ("[A]ny prior criminal conviction may be proved to affect [a witness's] credibility . . . ."); N.J. R. Evid. 609(a)(1) (making admissible any conviction, subject to balancing); N.Y. Crim. Proc. Law § 60.40(1) (making admissible "any previous conviction," if witness denies conviction); N.C. R. Evid. 609(a) (requiring trial court to admit convictions of a "felony, or of a Class A1, Class 1, or Class 2 misdemeanor"); R.I. R. Evid. 609(a)–(b) (subject to balancing); Wis. Stat. § 906.09(1)–(2) (making admissible any conviction, subject to balancing).

In total, forty-one states and the District of Columbia statutorily permit the introduction of prior misdemeanor *crimen falsi* convictions for impeachment purposes.

Nine states constitute a small minority that does not statutorily allow the introduction of such evidence: California, Colorado, Connecticut, Idaho, Kentucky, Montana, Nevada, Texas, and Virginia.  Of these, six states expressly provide that only prior felony convictions may be used to impeach.  *See* Cal. Evid. Code § 788; Colo. Rev. Stat. § 13-90-101; Conn. Evid. Code § 6-7; Idaho R. Evid. 609(a); Ky. R. Evid. 609(a); Nev. Rev. Stat. § 50.095.  Two states allow for prior felony convictions and convictions for crimes of moral turpitude.  *See* Tex. R. Evid. 609(a); Va. Sup. Ct. R. 2:609(a)–(b).  Montana is unique in prohibiting all prior-conviction evidence to impeach a witness.  *See* Mont. R. Evid. 609 & cmt. ("The Commission does not accept as valid

17

unreasonable application of clearly established federal law.[6] Thus, our only inquiry is whether

the application of those rules violated Olson's constitutional right to confront the witness as

already established by the Supreme Court.

---

the theory that a person's willingness to break the law can automatically be translated into willingness to give false testimony.").

Each of these nine states, however, has judicially mitigated the strictness of its rule. Texas and Virginia have suggested that crimes of moral turpitude encompass traditional *crimen falsi* offenses. *See Lape v. State*, 893 S.W.2d 949, 958 (Tex. Ct. App. 1994) ("Lying to a police officer or an officer of the court involves moral turpitude . . . because it involves dishonesty."); *Christman v. Commonwealth*, 348 S.E.2d 399, 403, 405 (Va. Ct. App. 1986) ("[I]t is well settled in this state that the character of a witness for veracity cannot be impeached by proof of a prior conviction of crime, unless the crime be one which involved the character of the witness for veracity. If the crime be a misdemeanor the right to inquire is limited to those that involve moral turpitude." (internal citations omitted) The court suggested that the latter category includes crimes involving "deception, trickery, forgery, lying, cheating or stealing.").

The other seven states have either expressly created or have suggested the existence of a loophole that would allow cross-examination about the *conduct* underlying a prior misdemeanor conviction for a crime involving dishonesty—but would not allow the conviction itself to be admissible. *See People v. Chatman*, 133 P.3d 534, 556 (Cal. 2006) ("Misdemeanor convictions themselves are not admissible for impeachment, although evidence of the underlying *conduct* may be admissible subject to the court's exercise of discretion."); *People v. Drake*, 748 P.2d 1237, 1246 (Colo. 1988) (allowing for "the circumstances surrounding a misdemeanor conviction" to be disclosed to impeach a witness for untruthfulness); *State v. Hall*, 991 A.2d 598, 604 (Conn. 2010) (allowing misdemeanor convictions if defendant "open[s] the door to the admission of the evidence"); *State v. Bergerud*, Nos. 39284, 39286, 2013 WL 5716821, at *6 (Idaho Ct. App. Oct. 22, 2013) (allowing "inquiries into specific instances of the witness's conduct during cross-examination of that witness if the conduct is probative of truthfulness or untruthfulness" but barring "evidence of the misdemeanor conviction itself"); *Allen v. Commonwealth*, 395 S.W.3d 451, 463–64 (Ky. 2013) (allowing "simple inquiry" about the conduct involved in a misdemeanor conviction, "so long as a proponent does not attempt to prove the conduct involved . . . by extrinsic evidence"); *State v. Martin*, 926 P.2d 1380, 1389 (Mont. 1996) (holding that cross-examination about whether witness previously provided false information "clearly was admissible" "as probative of [the witness's] veracity"); *Butler v. State*, 102 P.3d 71, 80 (Nev. 2004) (concluding that cross-examination by "merely ask[ing] [witness] questions about the prior [forgery] conviction" was proper because "[a]ttempted forgery is a crime involving dishonesty and conduct that goes to . . . truthfulness as a witness" and because there was "no indication that the State attempted to impeach [witness] by introducing extrinsic evidence").

[6] Because *Allen*'s holding rested on statutory construction—not constitutional principles—it does not alter the state court's presumptive conclusion that the application of KRE 608 and 609 did not violate the Confrontation Clause.

The district court, relying on *Boggs*, 226 F.3d at 743, applied the "arbitrary or disproportionate" standard set forth in *United States v. Scheffer*, 523 U.S. 303, 308 (1998), to determine whether Kentucky's evidentiary rules violated Olson's constitutional right to cross-examine with a *crimen falsi* conviction. *See Olson*, 2012 WL 2970487, at *10–11. Under this approach, state evidentiary rules would not unconstitutionally impair a defendant's right to confront a witness "so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). On appeal, Olson argues that *Scheffer* is inapposite to a pure cross-examination claim under the Confrontation Clause. She contends that the "arbitrary or disproportionate" standard only applies to a criminal defendant's claim under *Chambers v. Mississippi*, 410 U.S. 284 (1973), that her Fourteenth Amendment due-process right to present a complete defense has been violated. Appellant Br. 30–33.

We note that the Supreme Court has suggested that the right of cross-examination and the right to present a complete defense are in fact closely linked. In *Holmes v. South Carolina*, the Court observed that *"[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment*, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." 547 U.S. 319, 324 (2006) (internal quotation marks omitted) (emphasis added). Moreover, in *Chambers* itself, the Supreme Court did not specifically confine its analysis to the Fourteenth Amendment's Due Process Clause, recognizing that "[t]he right of cross-examination is . . . implicit in the constitutional right of confrontation." 410 U.S. at 295.

We need not determine the applicability of the *Scheffer* balancing test, however, because Olson's claim fails under either standard. The Supreme Court has not held that the

Confrontation Clause requires that a defendant be permitted to cross-examine using a *crimen falsi* conviction. Nor has Olson shown, in light of the above analysis, that the Kentucky court's presumptive conclusion that the rules are not "arbitrary" or "disproportionate" to their purposes is unreasonable.

Further, we note that even a pure Confrontation Clause violation is subject to harmless-error analysis. *See, e.g.*, *Van Arsdall*, 475 U.S. at 684 ("[W]e hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless-error analysis."). Here, Olson had an opportunity to impeach Roberts on other grounds. "The trial court ruled that [Olson] could ask if Roberts had been convicted of a felony, what his sentence was, if he had filed a motion for shock probation, if he had a deal with the [prosecutors], and whether he hoped to receive favorable treatment from the [prosecutors] in exchange for his testimony." *Olson*, 2008 WL 746651, at *8. The trial court's ruling did not restrict Olson's ability to pursue the theory that Roberts provided a statement in the expectation of receiving some benefit. It is unlikely that further impeachment of Roberts would have changed the outcome of Olson's trial.

## IV. Prosecution "Tactics"

Olson also contends that she is entitled to habeas relief because the prosecution purportedly engaged in "improper tactics" that denied her a fair trial and due process. At trial, the prosecution called Crabtree as a witness. Crabtree testified that Dressman admitted to killing Snellen[7] and that Crabtree never made any statements to Roberts about whether Crabtree was

---

[7] Crabtree testified: "I asked [Dressman] a few questions about what I had been hearing about him. I didn't — I just told him I heard that he had done some things and that — he looked at me kind of funny and I — I said — I said you killed that woman, didn't you? And he — he was about to cry when he said, yea, he killed that woman."

20

involved in the murder.[8]  As a result of this testimony, the prosecution was able to introduce Roberts's otherwise inadmissible hearsay—i.e., Crabtree's confession to Roberts—as a prior inconsistent statement to impeach Crabtree.[9]  Olson argues that the prosecution cannot deliberately solicit testimony it knows to be false solely for the purpose of admitting otherwise inadmissible hearsay.  *See* Appellant Br. 36.

The parties dispute whether Olson fairly presented this as a federal claim in state court and, thus, whether the claim is exhausted.  Olson maintains that she presented a federal prosecutorial-misconduct claim but that the Kentucky Supreme Court simply did not address it. *See* Appellant Br. 36–37.  Kentucky, in turn, asserts that the state supreme court did not address a federal claim because Olson did not fairly present one.

The Kentucky Supreme Court addressed Olson's claim regarding the prosecution's impeachment of Crabtree as one of evidentiary error.  *See Olson*, 2008 WL 746651, at *5–6.  It held that the prosecution properly impeached Crabtree, its own witness.  *Id.* at *6.  The state supreme court explained that Kentucky's rules of evidence, unlike the federal rules, allow prior inconsistent statements to be used both for impeachment purposes and as substantive evidence. *Ibid.*  It, therefore, held that counsel does not assist in the falsification of evidence by impeaching

---

[8] Counsel asked Crabtree: "Did you tell [Roberts] that you were involved in the murder of Diane Snellen?"  Crabtree responded: "No."  Counsel asked Crabtree: "Did you tell Richard Roberts that Diane made a gargling sound after she was stabbed?"  Crabtree responded: "No."  Counsel asked Crabtree: "Did you say that the knife was thrown in Elkhorn Creek after the murder?" Crabtree responded: "No, I didn't."  Counsel asked Crabtree: "Did you tell Richard Roberts that Dressman could cost you twenty to life if he talked?"  Crabtree responded: "No."  Counsel asked Crabtree: "Did you ask Richard Roberts to help you in murdering David Dressman and getting rid of his body?"  Crabtree responded: "No."

[9] Prior to Crabtree's testimony, Olson objected to the Commonwealth calling Crabtree as a witness on several grounds: the prosecution would be calling Crabtree to give what they believed to be perjured testimony, the purpose of calling Crabtree was merely to impeach him later with Richard Roberts's testimony, and the testimony Crabtree would give about Dressman's statements would violate the Confrontation Clause.

the false testimony of his own witness. *Ibid.* The state court did not address a prosecutorial-misconduct claim under federal law, but unlike with Olson's Confrontation Clause claim, we cannot presume that the court adjudicated the claim on the merits without first addressing whether Olson fairly presented the claim in her direct appeal.

The district court determined that Olson did not fairly present a federal constitutional claim to the state court. *See Olson*, 2012 WL 2970487, at \*6. In the alternative, the district court determined that Olson would not be entitled to relief on this ground because she does not satisfy the federal prosecutorial-misconduct standard. *See id.* at \*7.

Federal courts may not entertain a claim in habeas that the state court has not had an opportunity to address. *Ex parte Royall*, 117 U.S. 241, 251 (1886). Federal courts must ensure that the habeas "applicant has exhausted the remedies available in the courts of the State." § 2254(b). In order to satisfy § 2254(b)'s exhaustion requirement, the prisoner must have "fairly presented" to the state court the "substance of a federal habeas corpus claim." *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971); *accord Anderson v. Harless*, 459 U.S. 4, 6 (1982). Additionally, the state court must have had a "fair opportunity to apply controlling legal principles to the facts bearing upon [the] constitutional claim." *Anderson*, 459 U.S. at 6 (internal quotation marks omitted).

Federal courts assess the state-court record and the arguments to determine if a prisoner fairly presented a federal claim in state court. *Picard*, 404 U.S. at 276. We have said that when examining a habeas petitioner's state-court brief, courts should specifically look at:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

22

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

After reviewing Olson's state-court brief, we conclude that Olson did not "fairly present" a federal prosecutorial-misconduct claim to the Kentucky Supreme Court. The relevant heading in Olson's state-court brief stated: "Appellant was denied her right to a fair trial when the court allowed the Commonwealth to call Timothy Crabtree to the stand to give what they believed to be perjured testimony in order to impeach him with Richards Roberts's testimony." (capitalization altered). As part of that argument, Olson stated: "By soliciting perjured testimony through the guise of a plea agreement, the Commonwealth undermined the judicial process and committed prosecutorial misconduct." The argument section also contains a footnote in which Olson cites the American Bar Association's and the Kentucky Bar Association's ethical standards relating to prosecutors suborning false testimony, but it does not include any reference to cases applying these standards in the context of constitutional rights.

Reading Olson's entire argument section in context, we are satisfied that Olson's state-court claim is properly understood as an evidentiary one: that the Kentucky Supreme Court should adopt the "primary purpose test," as used by federal courts for evaluating whether a party may properly impeach its own witness under Federal Rule of Evidence 607. Under this federal standard, the prosecution may not call a witness for the primary purpose of placing inadmissible evidence before the jury under the guise of impeachment. Kentucky had previously declined to adopt the federal primary-purpose test, and Olson's state-court argument was that Kentucky should revisit the issue.

There is no indication that Olson was presenting a claim that any prosecutorial misconduct deprived her of her federal constitutional fair-trial right. The single federal case cited by Olson, *United States v. Gomez-Gallardo*, 915 F.2d 553 (9th Cir. 1990), is a Ninth

23

Circuit case that serves as an example of the application of the primary-purpose test. *Gomez-Gallardo* employs no constitutional analysis and does not reference a federal prosecutorial-misconduct claim.[10] *See id.* at 555–56. Further, she did not cite any state-court cases that rely on federal cases discussing prosecutorial misconduct. *See Whiting*, 395 F.3d at 613.

The best case Olson can make is that the heading in her state-court brief referenced "her right to a fair trial." Although a habeas "petitioner need not cite chapter and verse of constitutional law," "general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (internal quotation marks, citations, and alterations omitted). Here, Olson's barebones "fair trial" reference was insufficient to alert the state court to a federal prosecutorial-misconduct claim. Olson concedes that she "did not cite a case setting forth the prosecutorial misconduct standard." Appellant Br. 40. Nor did Olson reference the constitutional prosecutorial-misconduct standard in any way. Olson's federal constitutional claim—as currently presented on habeas—rests on *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959), but she did not reference these cases in state court. Olson contends that she "made a showing of the requirements" outlined in these cases, but that too is not enough. Although Olson's state-court brief contained factual allegations that might conceivably underlie a *Giglio* claim, the state court must "be given the opportunity to see both the factual and *legal* basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009) (emphasis added); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). Olson did not give the state court an opportunity to see the legal basis for a federal prosecutorial-misconduct claim.

---

[10] In Olson's reply brief, she also has one citation to *United States v. Morlang*, 531 F.2d 183, 189 (4th Cir. 1975). This too, in the context of Olson's brief, does not fairly present a federal prosecutorial-misconduct claim.

Lastly, Olson relies on her petition for rehearing to the Kentucky Supreme Court to show that she fairly presented a federal-law claim. In the petition, Olson goes one slight step further than she took in her initial briefs and states that the prosecution tactics "constituted prosecutorial misconduct which deprived him [sic] of a fair trial and due process contrary to the 6th and 14th Amendments, United States Constitution. *See United States v. Gomez-Gallardo*, 915 F.2d 553, 556 (9th Circuit 1990)."

A petition for rehearing to the Kentucky Supreme Court, in the context of this case, was not a proper place to raise a new federal issue. "[W]here [a] claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor, [it does not] constitute fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (internal citation and quotation marks omitted). In *Castille*, the petitioner raised new federal issues for the first time to the Pennsylvania Supreme Court in a petition for allocatur.[11] Under Pennsylvania law, such allocatur review was "not a matter of right, but of sound judicial discretion, and an appeal will be allowed only when there are special and important reasons therefor." *Id.* at 347 (quoting Pa. R. App. P. 1114). *Castille* requires federal habeas courts to examine the procedural context in which a claim is raised to determine whether it is one in which the merits are considered as of right or only in exceptional circumstances.

Here, the controlling rule is Kentucky Rule of Civil Procedure 76.32, which addresses when the Kentucky Supreme Court should consider the merits of a petition for rehearing. "Except in extraordinary cases when justice demands it, a petition for rehearing shall be limited

---

[11] "Allocatur" simply refers to the allowance of a pleading. It means: "It is allowed. This word formerly indicated that a writ, bill, or other pleading was allowed." Black's Law Dictionary 83 (8th ed.) (1999). In Pennsylvania, however, the word is "still used today . . . to denote permission to appeal." *Ibid.*

to a consideration of the issues argued on the appeal and will be granted only when it appears that the court . . . has misconceived the issues presented on the appeal . . . ." Ky. R. Civ. P. 76.32. In other words, the Kentucky Supreme Court only grants a petition for rehearing when there are "special or important reasons" for doing so. *See Castille*, 489 U.S. at 351. Because no such reasons existed, the rule of *Castille* controls. Olson's claim that was raised, if at all, "for the first and only time" in her petition for rehearing does not constitute fair presentation.[12] *Ibid.*

Olson argues that the actual standard used by the Kentucky Supreme Court for reviewing petitions for rehearing is less strict than the language of Rule 76.32 suggests. *See* Reply Br. 16–17. That is, Olson argues that Kentucky has judicially modified—and lightened—the standard. We have examined the two Kentucky cases Olson cites, and we do not believe they alter Rule 76.32's import.[13] To the contrary, Rule 76.32 "is only to be used to simply point out and have inaccuracies corrected, or to have the opinion extended to address matters that were in issue but not discussed." *Gormley v. Judicial Conduct Comm'n*, 332 S.W.3d 717, 731 (Ky. 2010)

---

[12] Because this area of law is admittedly nuanced, we offer two clarifying points. First, whether § 2254(b)'s exhaustion requirement is satisfied turns *only* on whether a "federal claim has been *fairly presented* to the state courts"—not whether the state court actually addressed the claim. *Castille*, 489 U.S. at 351. A state court's failure to address a claim does not render the claim unexhausted, for § 2254(b) does not "turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief." *Id.* at 350; *accord Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) ("[I]t is beyond peradventure that exhaustion does not require a state court adjudication on the merits of the claim at issue.").

Second, we do not suggest that a federal claim raised for the first time in a petition for rehearing to a state supreme court can *never* satisfy the fair-presentation requirement. The analysis depends on both the state procedural rule and the application of that rule to the facts of the case.

[13] In one case, the state supreme court determined that the court of appeals correctly applied Rule 76.32 when it extended a prior decision to "reflect what the law and the evidence had clearly established." *Morgan v. Scott*, 291 S.W.3d 622, 635 (Ky. 2009). In the other case, the state supreme court denied a petition for rehearing but modified its opinion in light of "extraordinary grounds." *Beaumont v. Commonwealth*, 295 S.W.3d 60, 66 (Ky. 2009). Both cases involve straightforward application of Rule 76.32. Neither case suggests that Kentucky has "interpreted its own rule to permit a grant of rehearing on grounds which were raised to a lesser extent" than the text of Rule 76.32 suggests. Reply Br. 17.

(Schroder, J., concurring in result only). We therefore conclude that the claim was not fairly presented to the Kentucky court.

We note that there is also a question as to whether the statement in Olson's petition, aside from its placement in a petition for rehearing, was in itself sufficient to present a federal-law claim. *Cf. Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2004) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory.").[14] The statement is immediately followed by a citation to *Gomez-Gallardo*, which, as noted above, employs no constitutional analysis and does not reference a federal prosecutorial-misconduct claim. In any event, because we have determined that the petition for rehearing was not a proper place for Olson to raise a new federal issue, we need not rest our holding that Olson's claim was not fairly presented to the state court on this ground.

## V. Prosecutor's Opening Statement

Olson asserts that she is entitled to habeas relief because the trial court deprived her of a fair trial and due process by denying her motion for a mistrial after the prosecution failed to call witnesses referenced in its opening statement. In the opening statement, the prosecution told the jury it would call Tim Creech and Debbie DePew as witnesses to testify that Olson admitted her involvement in the murder to them. The prosecution never called Creech or DePew to testify. Olson moved for a mistrial at the close of the prosecution's case based on its failure to call the

---

[14] There are numerous ways a defendant can fairly present a federal-law claim to a state court. For instance, the defendant might "cit[e] in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Or the defendant might "simply label[] the claim 'federal.'" *Ibid.* There may be some cases in which a mere statement that a "specific constitutional right" was denied is sufficient to fairly present a federal claim, at least where the brief at issue "provided a detailed recitation of the facts and specifically stated" that a state action violated a constitutional right. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

27

two witnesses. The trial court denied the motion, reasoning that Olson could point this out to the jury in her closing statement.

The Kentucky Supreme Court determined that the trial court did not abuse its discretion in denying Olson's motion for mistrial. Under Kentucky law, the prosecution may, in its opening, "state all of the facts and circumstances which it expects in good faith to be established by the evidence." *Olson*, 2008 WL 746651, at *7. The court concluded that Olson failed to show any misconduct or bad faith on the part of the prosecution.[15] *Ibid.* In its review on habeas, the district court found Olson's federal fair-trial claim to be unexhausted because it was not fairly presented to the Kentucky Supreme Court. *Olson*, 2012 WL 2970487, at *13. In the alternative, the district court found that, even if the claim were fairly presented, it failed on the merits. *Ibid.*

As with the prosecutorial-misconduct claim discussed above, there is considerable doubt as to whether Olson fairly presented a federal fair-trial claim in her briefs. Olson cited no federal law in support of her claim, and the state cases she did cite do not discuss federal constitutional law or rely on any decisions of the United States Supreme Court.

Assuming arguendo that Olson's barebones reference to the Sixth and Fourteenth Amendments fairly presented a federal claim, she cannot show that the resulting decision by the state court was contrary to clearly established federal law. The federal law that Olson now invokes is *Frazier v. Cupp*, 394 U.S. 731, 733–37 (1969)—a case in which the Supreme Court *denied* federal habeas relief. In *Frazier*, a witness whose expected testimony was summarized in the prosecution's opening statement later asserted his privilege against self-incrimination and was dismissed from the stand. The Court suggested that it might be true "that some remarks

---

[15] We find no indication in the record as to why the prosecution failed to call Creech and DePew.

included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable." *Id.* at 736. But because the Court agreed that the prosecution reasonably expected the witness discussed in its opening statement to testify in line with his previous statements, there was "no need to decide whether the type of prosecutorial misconduct alleged to have occurred would have been sufficient to constitute reversible constitutional error." *Id.* at 737. The Court, at most, suggested that there *could* be a case where a reference to a witness in an opening statement who then fails to testify would be constitutional error.

Even if *Frazier* could constitute clearly established federal law, Olson would not be entitled to relief under that standard. The district court properly concluded that there is no indication that the prosecution acted in bad faith, or that it emphasized its reference to the expected testimony or "touted" the importance of the expected witnesses. *See id.* at 736–37. Olson argues, without citation, that "it does not matter" that the prosecution neither emphasized nor touted its reference to Creech's and DePew's testimony. Appellant Br. 48. Olson cannot show that the state-court decision was contrary to or involved an unreasonable application of clearly established federal law.

## VI. Evidentiary Errors

Lastly, Olson argues that the trial court's admission of four different inadmissible hearsay statements deprived her of a fundamentally fair trial. First, at trial, Crabtree testified that Dressman asked him how to kill a person in a quiet place and that, after the murder, Dressman admitted to killing Snellen. Second, Steve McCormick, a friend of Dressman's, testified that McCormick asked Dressman if he knew who killed Snellen and that Dressman indicated that "they took care of that problem." Third, the trial court admitted into evidence the written proffer

29

of Crabtree's testimony that Dressman had confessed to Crabtree. Fourth, Nancy Lusby, a friend of Snellen's, testified about Olson's tumultuous relationship with her mother, based on conversations Lusby had with Snellen.

Before the Kentucky Supreme Court, Olson argued that Dressman's statements to Crabtree and McCormick were inadmissible hearsay and that they violated her Confrontation Clause right. The court determined that the prosecution did not violate Olson's confrontation right because its use of the statements was non-testimonial. *See Olson*, 2008 WL 746651, at *3. The court also determined that the trial court abused its discretion in admitting two of Dressman's statements—i.e., Crabtree's testimony that Dressman confessed and McCormick's testimony that Dressman admitted to killing Snellen—because Dressman did not satisfy the unavailability requirement to allow the statements to be admitted under the declaration-against-interest exception to the state's hearsay law. *See id.* at *4. The court, however, found these errors harmless because there was no reasonable probability that they affected the verdict against Olson. *See ibid.* The court then addressed Crabtree's testimony that Dressman asked him how to kill a person in a quiet place and concluded that this testimony was properly admitted. *See id.* at *5.

The state court separately addressed the admission of Crabtree's proffer, which stated that Dressman confessed to killing Snellen and that Olson wanted Dressman to take the blame for it. *See id.* at *8. The court determined that the confession within the proffer was inadmissible hearsay but that this error was harmless because there was, again, no reasonable probability that it affected the verdict against Olson. *See ibid.*

Similarly, the Kentucky Supreme Court also determined that the trial court erred in admitting Lusby's testimony about Snellen's tumultuous relationship with Olson. *See id.* at *11.

This testimony, based on Snellen's statements to Lusby, could not be admitted under Kentucky's state-of-mind hearsay exception for two reasons. *See ibid.* First, the prosecution offered the testimony to prove past events—i.e., that mother and daughter had a strained relationship—rather than Snellen's state of mind at the time her statements were uttered. *See ibid.* Second, only Olson's state of mind—not Snellen's—was relevant. *See ibid.* The Kentucky Supreme Court, however, also deemed this error to be harmless in light of the "overwhelming evidence of a troubled mother-daughter relationship." *Id.* at *12.

The district court denied relief because Olson did not fairly present a federal claim that the cumulative admission of inadmissible hearsay deprived her of a fundamentally fair trial. Although we agree with the district court's analysis,[16] Olson's bigger problem is her failure to suggest that the state-court decision was contrary to or involved an unreasonable application of clearly established federal law. The only federal principle that Olson invokes[17] is the statement from a panel of this circuit that admission of prejudicial evidence constitutes a denial of fundamental fairness when the evidence is a "crucial, critical highly significant factor" in the trial. *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000). But as the Supreme Court recently emphasized, "circuit precedent"—even from our own circuit—"does not constitute clearly established Federal law, as determined by the Supreme Court." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (6th Cir. 2012) (internal quotation marks omitted). The "crucial, critical highly significant factor" standard derives from no Supreme Court case; the panel took the standard

---

[16] As with Olson's federal prosecutorial-misconduct claim, Olson's petition for rehearing comes slightly closer to fair presentation than do Olson's opening briefs. For the reasons explained in Part IV, however, Olson cannot rely on her petition for rehearing.

[17] Although Olson does not invoke it, the relevant standard for a fundamental-fairness claim is "whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." *Dowling v. United States*, 493 U.S. 342, 353 (1990) (internal quotation marks, citations, and alterations omitted).

from a line of Eleventh and Fifth Circuit cases, and it ultimately derives from a 1968 Fifth Circuit opinion—and a concurrence at that. *See Luna v. Beto*, 395 F.2d 35, 41 (5th Cir. 1968) (Brown, C.J., concurring).[18] Olson's other citations to circuit cases are no more helpful.

We condone neither the prosecution's solicitation of inadmissible hearsay nor its admission. But the Kentucky Supreme Court addressed these errors and found them harmless. We express no view as to the soundness of the state court's ruling, for we do not sit as a super state appellate court when reviewing a state-court judgment on habeas. *Payne v. Janasz*, 711 F.2d 1305, 1310 (6th Cir. 1983). Our only concern is whether Olson has established a claim for federal habeas relief under § 2254(d). She has not.

## VII

Olson has not shown that the state rules excluding Roberts's prior conviction violated her federal constitutional rights as determined by the Supreme Court. Olson's other habeas claims also fail to identify a state-court decision that was contrary to, or that involved an unreasonable application of, clearly established federal law. Accordingly, we AFFIRM the district court's denial of the petition for a writ of habeas corpus.

---

[18] Even in *Luna*, Chief Judge Brown did not suggest that a mere evidentiary error amounting to a "crucial, critical, highly significant factor" alone was sufficient for constitutional error. He felt that, additionally, the evidentiary error "must have some State complicity in it." *Luna*, 395 at 41 (Brown, C.J., concurring).